THE STATE, SAMUEL D. DICKINSON, PROSECUTOR, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON ET AL.

THE STATE, SAMUEL D. DICKINSON, PROSECUTOR, v. FREDERICK RIPPE ET AL.

Submitted March 15, 1904—Decided June 13, 1904.

1. Upon proceedings being taken by the board of chosen freeholders of the county of Hudson to erect a new court house for the use of the courts and county offices and to provide for a bond issue to meet a portion of the expense, the validity thereof was challenged, upon *certiorari*, on the ground that there was no existing valid legislation to support the proceeding. The act of March 22d, 1901 (*Pamph. L., p.* 275), being cited, in its support, the prosecutor contended that this statute was special and unconstitutional as contravening article 4, section 7, paragraph 11 of the constitution, by reason of the tenth section of the act, which provided "that this act shall not affect the provisions of any other act for the erection of a new court house and county buildings in any county whereunder proceedings have already been taken; nor shall it apply to counties having a population, ascertained by the last preceding census, of less than two hundred thousand inhabitants." *Held,* that this act was not open to attack upon this ground, and that the proceedings were valid.

2. Since the building of a court house and county buildings is unlikely to occur more than once in a generation, and when once undertaken involves important existing conditions, such as large contracts for construction and bond issues to raise the necessary funds, a proviso in a general act such as the above—that it shall not affect the provisions of any other act for the erection of such buildings whereunder proceedings have already been taken—will be regarded as creating a classification which has a reasonable relation to the subject-matter of the legislation, and as not in violation of the constitutional mandate against special legislation.

3. The limitation of the operation of such a statute to counties of a minimum population is not subject to the ban against special legislation, but is in harmony with the rule that where population bears a reasonable relation to the subject-matter, legislation based thereon is constitutional.

On *certiorari.*

Before Justices HENDRICKSON and PITNEY.

For the prosecutor, *George L. Record* and *William H. Speer.*

For the defendants, *John L. Mulvaney* and *Gilbert Collins.*

The opinion of the court was delivered by

HENDRICKSON, J. These writs of *certiorari* bring up for review certain resolutions and proceedings of the board of chosen freeholders of the county of Hudson and of a committee thereof, ordering the erection of a new court house for the use of the courts and county offices of that county; also for the purchase or condemnation of suitable lands in Jersey City for that purpose; and also providing for an issue of bonds of the county to the amount of $150,000, upon which to raise funds to be expended in the acquirement of said lands and in the erection of such building.

The prosecutor, under the writ first named, challenges the validity of these proceedings of the board itself as such, on the ground that its action was without legislative authority therefor and that no valid constitutional legislation then existed, or now exists, giving such authority. The acts that have been discussed as having some bearing upon the true solution of the question are the act of March 22d, 1900 (*Pamph. L., p.* 190); the act of March 19th, 1901 (*Pamph. L., p.* 79); the act of March 22d, 1901 (*Pamph. L., p.* 272); the act of March 19th, 1902, amendatory to the act of March 19th, 1901 (*Pamph. L.* 1902, *p.* 42); and the act of February 26th, 1903, a supplement to the act of March 22d, 1900 (*Pamph. L.* 1903, *p.* 19).

It was frankly admitted by the defendants at the hearing that there had been some doubt in the minds of those who were responsible for this municipal action as to which of these acts should be relied on for the requisite legislative authority, and that the effort had been to so regulate its procedure that its action might be sustained under any one of the acts named that should afterwards be held to be

valid. But it is contended by the defendants in *certiorari* that the second act of 1901 entitled "An act to provide accommodations for the courts and county offices in counties of this state, and to authorize the issue and sale of bonds therefor" is a valid and constitutional act and that it fully supports the proceedings in question. There is no dispute but that the terms of the act, if valid, are sufficient to sustain the proceedings of the freeholders under review, ·but the prosecutor's contention is that this act is special and unconstitutional as contravening article 4, section 7 of paragraph 11 of the constitution, and is therefore void. It is contended that this infirmity arises out of the tenth section of the act (*Pamph. L.* 1901, *p.* 275), which provides as follows: "This act shall not affect the provisions of any other act for the erection of a new court house and county buildings in any county whereunder proceedings have already been taken; nor shall it apply to counties having a population, ascertained by the last preceding national census, of less than two hundred thousand inhabitants."

This view is urged, first, upon the ground that the first clause of the section in effect excepts from the application of the act any county where proceedings have already been taken for the erection of a new court house under another statute. The argument is that the attempt to classify counties into those which are building court houses and those which are not is unsound. But conceding that the construction of the clause here contended for is the correct one, can we say that such a proviso renders the act special, as based upon a faulty classification? In the same section the application of the act is limited to counties of the first class. This is the legislative classification provided for in the act of February 7th, 1883 (*Gen. Stat., p.* 420), and its supplements. But classification by appropriate characteristics, aside from the act just named, is constitutional. *Hermann* v. *Guttenberg,* 34 *Vroom* 616; *Hammer* v. *State, ex rel. Richards,* 15 *Id.* 667; *Freeholders of Hudson* v. *Clarke,* 36 *Id.* 271; *Riccio* v. *Hoboken,* 40 *Id.* 649.

The condition of valid legislation of that character is stated by Mr. Justice Pitney, speaking for the Court of Errors in Riccio v. Hoboken. He says: "It must rest on peculiarities or characteristics that substantially differentiate the localities included from those excluded, and that render divergent legislative enactments appropriate to the several localities respectively." I do not understand that this proposition of law is disputed, the point being made, as before stated, that the classification here made is not based upon substantial differences; that it bears no reasonable relation to the subject-matter of the legislation. But we are not prepared to condemn such a classification, if it may be called such, when applied to the circumstances of this case. The fact must be recognized that the building of a court house, particularly in counties of the first class, is not likely to occur more than once in a generation. And where proceedings have been already taken by a county to erect such a structure at great expense, involving probably large contracts for the purposes of construction and bond issues to secure the necessary funds, would it not be highly reasonable, in view of these conditions, that the legislature should except such county from new legislation of a general character upon the same subject-matter? The grounds of justification for such divergence in legislation are so palpable that I need not refer to them further. It has been held that while, as a general rule, a classification, with a view to the enactment of general laws, cannot be based on existing circumstances only, or those of a limited duration, yet a distinctive class may be based on existing conditions when the purpose of the law is temporary only. *Alexander* v. *Duluth, 77 Minn.* 445.

The defendants deny the effect thus ascribed to the clause in question by the prosecutor and contend its true force and effect is to save existing rights and interests in the counties where proceedings have already begun; that since the act is prospective, the annexing a saving clause was prudent but unnecessary. Under the view we have already

taken we deem it unnecessary to determine the question of construction thus raised.

The next ground of attack upon the validity of the act is that it is limited to counties of the first class, the contention being that the provisions of the act and its safeguards apply with equal force to counties of the second class.

The general principle upon this subject, evolved from a long line of decisions in this state, was expressed by Mr. Justice Fort, speaking for the Court of Errors, in the recent case of *Freeholders of Hudson* v. *Clarke*, 36 *Vroom* 271. He says "that legislation, where population bears a reasonable relation to the subject-matter of the legislation, is constitutional, is settled by a line of well-considered cases in this state," citing the cases. The case just cited was based upon a statute adopting a salary in lieu of fees to be paid to county clerks, surrogates and registers of deeds in counties of the first class. This legislation was supported, though it left such officers in the other counties of the state to be paid by fees as heretofore. The act creating this diversity of statutory regulation was held not to be special upon the ground, generally speaking, that in the larger counties, by reason of a large increase of population, the fees had so swollen in the aggregate as to more than pay a reasonable compensation to those officers. It was therefore deemed to be in accord with wise public policy to salary these officers and direct the fees to go into the public treasury.

It was also deemed to be a proper exercise of legislative discretion to leave the other counties under the fee system, because the disparity between the amount of fees receivable and the reasonable pay of the officers did not exist, or was much less than that in the first-class counties.

So I think, in the act now under review, there is perceptible a reasonable relation of population to the subject-matter. It would seem that in counties of the first class, having so large a population, where the demands for the accommodation of the courts and county officers are vastly greater than in other counties of the state, legislation might be justified

requiring greater detail and providing greater safeguards than might be deemed requisite in the smaller counties. For illustration, in the issue of bonds, limiting the issue to a percentage of the amount of the ratables, the time to run and the rate of interest, it is quite apparent, I think, that a diversity of regulations according to population would be justified.

Upon both the points discussed the prosecutor has failed to convince us that the act in question is not constitutional and valid. It remains to deal with the proceedings brought up under the second writ. These are companion writs, allowed at the same time and upon the application of the same prosecutor with the single purpose of testing the validity of the proceeding to build a new court house. We must therefore look at the returns and stipulations of fact in both cases in disposing of the writs. It is proper to say that in proceedings to build a new court house the act of 1900 provided for the constitution of a county building commission, which should consist of the director of the board of freeholders and two other residents of the county, to be appointed by such director. This commission was clothed with certain powers and duties apart from certain other duties imposed upon the board itself. Under the act of March 19th, 1901, the provisions were similar to these except that the word "committee" is used instead of the word "commission," and the members to be appointed must be members of the board instead of mere residents of the county. In the proceedings under review Mr. Rippe, who was director, announced to the board the appointment of Clements and Smith, as residents and citizens of the county and also members of the board, to act, with himself, in the matter of the erection of the new county building, and, by resolution, this action of the director was ratified and confirmed by the board. They were not designated either as a county building commission or committee. Every act performed by them thereafter in the preliminary work of the enterprise was by resolution, ratified and adopted by the board.

The second writ is brought to test the legality of the acts of those three members of the board, which the prosecutor alleges were performed under the act of 1900 and the act of March 19th, 1901. But we find, as before stated, that their acts were not done independently of the action of the board itself. To illustrate, the record shows that this committee organized and held meetings; appointed an architect; appointed an agent to procure options on real estate for a site for the building; expressed their view as to a suitable location; authorized a contract for the purchase of land at a certain price and afterwards rescinded their action in that matter; directed the attorney of the board to commence condemnation proceedings; but every such act was reported by them to the board in writing, and by it ratified and adopted as its own act.

The prosecutor contends that the proceedings of Rippe and his associates can only be justified under the acts of 1900 and the act of March 19th, 1901; that these acts are void, because they have been repealed, and because they are special and unconstitutional. But we do not deem it necessary to consider the question of the validity of this legislation thus raised. We do not think that the proceedings in question are of such a character as to entitle the prosecutor to review them by a writ of *certiorari*. We think the proceedings do not materially differ from those of a committee of the board itself. Although the three members resolved and determined, it was always subject to the action and ratification of the board itself. What they did merged into the acts and proceedings which are already held by us to have been legal. See *Kraft* v. *Board of Education,* 38 *Vroom* 512.

The writ of *certiorari* may be used to review the action of a department of municipal government, boards of commissioners who act independently under the authority of a statute (*State* v. *Coleman,* 1 *Gr.* 98; 4 *Enc. Pl. & Pr.* 96), but not to review the proceedings of a committee of such body apart from the action of the body itself, ratifying and adopting the same.

The result is that the proceedings under the writ first named will be affirmed and the writ secondly named will be dismissed.

The prevailing party will have costs on both writs.