THE BOARD OF EDUCATION OF THE CITY OF FORT SCOTT, *Plaintiff*, v. W. E. DAVIS, as State Auditor, etc., *Defendant*.

No. 18,141.

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*Bonded Indebtedness*—*School Purposes*—*Cities of First Class.* Chapter 259 of the Laws of 1911, which purports to limit the bonded indebtedness that may be voted and assumed by cities of the first class for school purposes, is repugnant to the provisions of the state constitution prohibiting special legislation.

Original proceeding in mandamus. Opinion filed May 11, 1912. Writ denied.

*W. W. Padgett, E. C. Gates,* and *A. M. Keene,* for the plaintiff.

*John S. Dawson,* attorney-general, and *James P. Coleman,* assistant attorney-general, for the defendant.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a proceeding by the board of education of Fort Scott to compel W. E. Davis, as state auditor, to register certain school bonds issued by the board of education.

It was determined by the board that the city needed a new high-school building, and accordingly a proposition to vote bonds for that purpose was submitted to the electors of the city. After the proper preliminary steps were taken the election was held and a large majority of the votes cast were in favor of the proposition. The bonds were then executed by the board and presented to the auditor of state for registration, but that officer declined to register them and based his refusal on the ground that chapter 259 of the Laws of 1911, under the authority of which they were voted and issued, violated the constitutional limitation prohibiting special legislation.

The act purports to amend section 7558 of the General Statutes of 1909 and to provide other limitations on the voting of bonds for school purposes and on the assumption of indebtedness in cities of the first class. After authorizing the calling and holding of an election to vote bonds for school purposes the act proceeds:

"Nor shall the entire amount of such school bonds issued exceed, in the aggregate, including existing indebtedness, in cities having a population of 20,000 and over, one per cent of the valuation of taxable property of such city as ascertained by the last assessment for state and county purposes previous to incurring the proposed indebtedness; in cities having a population of 20,000 and under whose assessed valuation does not exceed eleven million dollars two per cent of the value of the taxable property of such city as ascertained by the last assessment for state and county purposes previous to incurring the proposed indebtedness. Any member of the board of education, or officer thereof, who shall vote for, counsel, consent to, or in any wise assist in the issue of any bonds or bond, in excess of the percentum

herein authorized, shall be liable jointly and severally to the holder of any such bonds for the amount due thereon, to be recovered in a civil action in any court of competent jurisdiction; and judgment rendered thereon may be collected and enforced in the same manner as other judgments are collected and enforced; provided, that in cities of the first class having more than 70,000 population, school bonds may be issued to the extent of not more than one and five-tenths per cent of such value of taxable property." (Laws of 1911, chap. 259, § 1.)

The contention of the auditor is that the act conflicts with section 17 of article 2 of the state constitution, which provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The section in its original form was interpreted to mean that whether a general law could be made applicable or a special law was necessary was exclusively a question for the legislature itself, but in 1906 the people concluded that the intended limitation was ineffectual, and therefore an amendment was adopted which, in effect, declared that the mere enactment of a special law was not a conclusive determination that a general one was inapplicable and the duty to determine that question was expressly enjoined upon the courts.

The statute which was amended by the act in question placed a limitation on the assumption of indebtedness for the building and repair of schoolhouses in cities of the first class at one per cent of the value of the taxable property of the city, except in those having more than 70,000 population, wherein the limit was fixed at one and five-tenths per cent. Other classes were created and the general restrictions were greatly narrowed by the amendatory act, and the contention is that the classification is so arbitrary and unreasonable

Board of Education v. Davis.

as to bring the act within the prohibition against special legislation. It is conceded that a law, to be general, need not include or operate on all persons and classes alike within the state. It is enough if it applies to and operates uniformly upon all of a single class. It is also true that the legislature has a wide discretion in selecting and classifying the objects of legislation provided there is a proper classification. For legislative purposes cities are generally classified on the basis of population. They are divided into first, second and third class cities, and these classes have been subdivided into others based on population, taxable property, as well as other conditions and relations. In *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, it was said:·

"It is competent for the legislature to classify cities according to population for various purposes, and laws applicable to all of the members of any class so created may be general laws and have a uniform operation throughout the state." (Syl. ¶ 2.)

That there may be classes and subdivisions of classes in legislation as to cities without offending the constitutional restriction as to special laws is conceded, but such subdivisions and classifications can not be carried so far as to produce a special result or an enactment which will not operate equally upon all that naturally belong to a defined class. "If the classification is arbitrary or fictitious it is objectionable, but where it is based upon such differences in situation as to be reasonable in view of the purpose to be accomplished, and tends fairly to accomplish that purpose, it must be upheld." (*In re Williams,* 79 Kan. 212, 217, 98 Pac. 777.)

(See, also, *Clarke v. Lawrence,* 75 Kan. 26, 88 Pac. 735; *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *The State v. Pauley,* 83 Kan. 456, 112 Pac. 141.)

An act which operates on all persons and things standing in the same situation and circumstances and

19—87 KAN.

which may be reasonably placed in a single class is a general law, but an act is not general which arbitrarily and capriciously restricts the operation of the act to particular persons or things of a class and does not embrace or affect all which naturally belong to that class. A law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation. The supreme court of New Jersey, in defining a general law, said:

"A law is to be regarded as general when its provisions apply to all objects of legislation, distinguished alike by qualities and attributes which necessitate the legislation, or to which the enactment has manifest relation. Such law must embrace all and exclude none whose condition and wants render ' such legislation equally necessary or appropriate to them as a class." (*Randolph v. Wood*, 49 N. J. Law, 85, 88.)

Is the classification of this act natural, rational and reasonable, or is it arbitrary, illusory and capricious? Does it, either by inclusion or exclusion, narrow its application so that it produces a special result or otherwise offends· the limitation against special laws? The act purports to provide limitations on the voting of school bonds in all cities of the first class, and to accomplish this purpose attempts to subdivide such cities into more restricted classes. It makes a class of cities of more than 70,000 population and authorizes an issue of bonds to the extent of one and five-tenths per cent of the value of the taxable property without regard to what the value may be. It makes a second class of cities having a population of 20,000 and over and authorizes an issue of bonds which, including existing indebtedness, will not exceed one per cent of the value of the taxable property, whether much or little. A third class is created of cities having 20,000 population and under whose assessed valuation does not exceed eleven million dollars, and in these they may issue two per cent of the value of the taxable property according

to the last assessment. This leaves out of consideration a number of cities which have less than 20,000 inhabitants and whose assessed valuation is more than eleven million dollars. It is difficult to find a rational theory for the classes created and for some of the distinctions made between them, but the exclusion of a number of cities for which no limitation is prescribed and which are in substantially the same situation as those provided ·for is arbitrary and capricious. By excluding these the law is given a special operation, both as to the ones excluded as well as to those included. .

Why should a city having·an assessed valuation of more than eleven million dollars be permitted to assume indebtedness without limitation and a city of the same population˙ having less taxable property be restricted to two per cent? However, the principal objection to the act is that it does not, as the New Jersey court said, "embrace all and exclude none whose condition and wants render such legislation equally necessary or appropriate to them as a class." (*Randolph v. Wood,* 49 N. J. Law, 85, 88.) Separating a number of cities and setting them apart from the operation of this or other limitation law necessarily gives the act a special effect and produces a result clearly prohibited by the constitution. There are at least four of these overlooked cities which, if the law were held valid, might issue bonds without limitation, as is shown by a list furnished by the attorney-general and printed in his brief as an illustration of the capricious character of the classification made in the act and in which he puts the omitted cities in the fourth class. The list follows:

|  | Assessed valuation. | Population. |
|---|---|---|
| "First Class: |  |  |
| Kansas City | $86,443,635 | 85,679 |
| "Second Class: |  |  |
| Leavenworth | 17,798,451 | 22,110 |
| Topeka | 50,950,000 | 43,682 |
| Wichita | 64,133,116 | 55,583 . |
| "Third Class: |  |  |
| Coffeyville | 10,766,609 | 15,350 |
| Fort Scott | 8,521,291 | 11,830 |

Board of Education v. Davis.

| "Fourth Class: | Assessed valuation. | Population. |
|---|---|---|
| Atchison | 16,266,606 | 16,429 |
| Parsons | 11,773,815 | 13,847 |
| Pittsburg | 11,017,519 | 15,153 |
| Hutchinson | 20,622,681 | 17,297" |

In this it appears that Coffeyville, with a population of 15,350 and taxable property valued at $10,766,609, is limited to two per cent of its valuation, while Pittsburg, with 15,153 inhabitants and a valuation of $11,017,519, may issue bonds without limit. Leavenworth, with 22,110 population can issue one per cent of its valuation, while Hutchinson, with 17,297 population, can issue without limit. Other comparisons might be made which would show distinctions equally illusory. It can hardly be said that the classification rests on a natural and reasonable basis or that there are such differences of the situation or circumstances which justify the narrowing and restricting of classes through the process of inclusion and exclusion prescribed in the act. A law which provides for a limitation in one locality and suspends its operation in another that has substantially the same characteristics and is in like condition as the first is not a general law in the sense the term is used in the constitution. Since the act excepts from its operation certain cities it produces a special result and offends the constitutional limitation forbidding special legislation.

The writ is therefore denied.