No. 20,636.

THE STATE OF KANSAS, ex rel. HERBERT E. RAMSEY, as County
Attorney, etc., *Appellant,* v. C. E. DEMING, *Appellee.*

SYLLABUS BY THE COURT.

1. STATUTE—*Establishing City Courts in Certain Counties—"Special
   Act."* Chapter 196 of the Laws of 1915, although couched in terms of
   a general enactment, makes so restricted a classification of the counties
   in which it is to be effective that it is in fact a special act.

2. SAME—*Special Legislation.* Chapter 196 of the Laws of 1915, which
   attempts to establish courts in counties of 55,000 population or less,
   having cities of 16,000 population or more, but exempting from the
   control of such courts all cities of less than 16,000 inhabitants in such
   counties, and providing that only after a vote of the people shall the
   act be operative in such counties as would fall within such class if
   they comprise a separate judicial district, is special legislation under
   the test of section 17 of article 2 of the state constitution.

3. SAME—*City Courts—Classification of Counties—Statute Unconstitu-
   tional.* An act of the legistlature which attempts a classification of
   counties which is capricious, illogical and unreasonable is essentially
   special and not general in its nature, and can not be upheld under the
   scrutiny of the constitutional amendment of 1906. (Const., art. 2, § 17.)

4. CITY COURTS — *Chapter 196 of the Laws of 1915 — Unconstitutional.*
   Chapter 196 of the Laws of 1915, which prescribes a different rule
   from that of the general law for the administration of justice as to
   service of process, procedure, the law of garnishment, the giving of
   bonds in garnishment and on appeals, violates the uniformity clause
   of the state constitution. (Const., art. 2, § 17.)

Appeal from Reno district court; FRANK F. PRIGG, judge.
Opinion filed June 10, 1916. Reversed.

*H. E. Ramsey,* county attorney, *W. H. Lewis,* and *C. M.
Williams,* both of Hutchinson, for the appellant.

*F. Dumont Smith, W. G. Fairchild,* and *Warren H. White,*
all of Hutchinson, for the appellee; *Walter F. Jones,* of Hutch-
inson, of counsel.

The opinion of the court was delivered by

DAWSON, J.: The state of Kansas, through one of its law-
fully authorized officers, brought this action in quo warranto,
to challenge the authority of the defendant to exercise the

The State, *ex rel.,* v. Deming.

powers of a civil magistrate in Reno county under the official title of "judge of the city court of Hutchinson."

A demurrer to the plaintiff's petition was sustained. Hence this appeal.

Counsel for the state insist that the statute (Laws 1915, ch. 196) under which the defendant justifies his assumption of judicial powers is unconstitutional, and that the act offends particularly against sections 16 and 17 of article 2 of the state constitution. These provisions of our fundamental law provide:

"SEC. 16. No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended unless the new act contain the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed.

"SEC. 17. All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; *and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of this state.*"

The title to the act reads:

"An act relating to cities of the first class not now having a city court creating city courts therein, defining the jurisdiction thereof, providing officers therefor, defining their powers and duties, limiting the jurisdiction of the justice of the peace of said cities and making the judge thereof *ex-officio* police judge of the city in which said court is located, amending section 952 of the General Statutes of 1909, and section 1 of chapter 96 of the Laws of 1911, and repealing said original sections."

It may not be necessary to determine this lawsuit on the question of the sufficiency of the title to the act, but as plaintiff's objections thereto give some outline of the nature of the act, we will incorporate them here:

"First—The title of the act is deceptive; it purports to establish a city court, in all cities of the first class, not having a city court; when in fact the act provides for the establishment of city courts in cities of the first class, in counties having a population of 55,000 and less.

"Second—The title of the act is deceptive in that it purports to establish city courts, when the act in fact establishes county courts. The incumbent can be elected from any point in the county and is elected by the electors of the county, and is paid by the county. It is not a city court, but a county court; his jurisdiction is coëxtensive with the county.

"Third—The jurisdiction of the justices of the peace in cities of the first class, embraced in the act is diminished to $1, while the jurisdiction of other justices of the peace within the county remains the same; this is a discrimination against justices of the peace in such cities in favor of justices of the peace in the county in which such city is located.

"Fourth—The title of the act contains two distinct subjects: the creation of courts in cities of the first class not now having a city court, and the amendment of section 952 of the General Statutes of 1909, and section 1, chapter 96 of the Laws of 1911, and repealing the original sections. The amending of section 952 of the General Statutes of 1909 and repealing the original section is a distinct and separate subject from creating courts in cities of the first class, and is in no way connected with the subject of a city court in cities of the first class."

The act provides that in each city of the first class in counties of 55,000 population or less, in which there is not already a city court, a city court is established; but the act is not to apply to any city of less than 16,000 population, nor in any county which is a separate judicial district unless adopted by a vote of the people at an election called by the board of county commissioners upon a petition of ten per cent of the county electors.

Some of the principal details of the act relate to this new court's jurisdiction and to the scope of its powers over various kinds of litigation. It provides a form of process and procedure peculiar to itself and differing in some important details from the established procedure in other inferior courts of the state. It also makes some important changes in substantive law effective in the counties which fall under its operation. No bond is required from the plaintiff in garnishment proceedings. An individual garnishee must answer in five days, but a corporation garnishee may have ten days to answer. Special provision is made for subjecting a debtor's assets to garnishment proceedings considerably different from that which prevails elsewhere throughout the state. In one place (§ 7) the act says that process shall be issued to the sheriff, chief of police or any constable; elsewhere, in sections 13 and 14, the process is to be directed to the sheriff or constable. Process may also be served by plaintiff personally or by registered mail. No costs shall be taxed which might have been avoided "by making service according to provisions of this act." (§ 23.)

On demand for a jury trial the plaintiff must deposit one dollar for each juror required, instead of fifty cents, as required in the district court. (Gen. Stat. 1909, § 3692; *The State v. Hoover*, 78 Kan. 863, 98 Pac. 276.)

The State, *ex rel.*, v. Deming.

Judgments may be opened at any time *within ten days* after the levy of an execution.

No bond for appeal to the district court is required unless ordered by the district judge.

In all cities controlled by this act the judge of this court shall be *ex officio* the city police judge.

Certain election laws and other statutes are amended to conform to the general plan of this act. In doing so, however, we note that the act changes the qualifications of the officers of all city courts (§ 5) in Topeka, Wichita, Atchison, Coffeyville, Kansas City and elsewhere where city courts were established by special acts prior to the constitutional amendment of 1906. Hereafter such officers need only be residents of the county—not necessarily residents of their respective cities as heretofore. Some independent statutes thus affected are: Laws 1897, ch. 107, § 4, creating the city courts of Kansas City; Laws 1899, ch. 125, § 5, creating the city court of Atchison; Laws 1899, ch. 126, § 3a, creating the city court of Coffeyville; Laws 1899, ch. 128, § 5, creating the city court of Leavenworth; Laws 1899, ch. 129, § 4, creating the city court of Topeka; Laws 1899, ch. 130, § 5, creating the city court of Wichita.

It need hardly be said that courts approach the consideration of questions challenging the constitutionality of statutes very much predisposed to sustain the enactments. And where the alleged defect in an act lies only in the fact that it is special and not general, the courts heretofore have commonly left the responsibility for such acts with the legislature, whose membership is as solemnly bound to observe the provisions of the constitution as are the justices and judges of the commonwealth. With the adoption of the constitutional amendment of 1906, however, an added duty was imposed upon the judiciary—the duty of determining whether an act of the legislature is repugnant to the provisions of section 17 of article 2. It will be observed that the constitutional provision does not absolutely forbid special legislation. It provides that all laws of a general nature shall have uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted. Now it may be readily conceded that those cities which, like Hutchinson, have greatly

developed in population and in the diversity and extent of their interests and concerns in recent years are as much in need of city courts, or of some local courts more efficient than those of a justice of the peace, as were Topeka, Atchison, Coffeyville and the other cities which were supplied with city courts by special acts prior to the amendment of 1906. There is no doubt of the power of the legislature to meet the situation of Hutchinson and all cities which now or may hereafter attain its importance by a general act, and yet leave undisturbed the courts created by lawful special acts heretofore. (*Board of Com'rs v. Ætna Life Ins. Co.*, 90 Fed. 222; *Dickinson v. Freeholders of Hudson*, 71 N. J. Law, 589, 58 Atl. 182; *Evans v. Phillipi*, 117 Pa. St. 226, 11 Atl. 630; *Road in Cheltenham Township*, 140 Pa. St. 136, 21 Atl. 238; 36 Cyc. 989.)

But what have we here? In counties of 55,000 population or less, having cities of 16,000 population or more, where no city court now exists, a court is created by the act, not for the city but for the county. The people who fortunately or unfortunately reside in such a county, although they may reside ten, twenty or thirty miles from the city of the requisite population, are subjected to the jurisdiction of such a court. That is to say, they are, if the county in which they reside is one of two or more comprising a judicial district. If more or less fortunately their county is a single judicial district, the establishment of such a court in their midst is left to their election. But we must note that not all the people residing in a county of 55,000 population or less having one or more cities of 16,000 population or more will come under the operation of this act. All the people of such a county who reside in cities of less than 16,000 population are exempt from its operation, "Provided," says section 1, "this act shall not apply to any city of less than 16,000 population." This would sometimes result in part of a county falling under its provisions and part of it outside its control. It would take considerable temerity to declare that such an act makes a reasonable classification of counties, even after every logical allowance is made in consideration of the special wants and needs of any local situation.

What reason based on classification of counties can be advanced why a plaintiff in a county governed by this act should be permitted to harass his debtor by garnishment without

bond when all other citizens elsewhere in the state must give such assurance to prevent unconscionable demands? Why may a corporation in such a county have ten days to answer in garnishment and an individual have only five? Why, too, may not both corporation and individual garnishees have the time accorded to garnishees elsewhere? (Civ. Code, § 233; Jus. Civ. Code, § 54b.) Why should the salutary provisions of law to prevent oppression of debtors operative throughout the state (Laws 1913, ch. 232) not apply to debtors in any counties of 55,000 population or less, having one or more cities of 16,000 population or more? And if justifiable where the county does not constitute a separate judicial district, then why not in a county which does constitute a separate judicial district? Are debtors more or less needy in such a county as this act is designed to cover? And if this act serves any useful purpose in a county, in its cities of more than 16,000 population and in its rural districts, why not also in its cities of less than 16,000 population? Is there anything peculiar in such a county that warrants a departure from the ordinary procedure for the administration of justice?

All these questions answer themselves. The attempted classification of counties in which this act is operative by legislative decree, and in which it may or may not become operative dependent upon the vote of the people, and those in which it is not to become operative at all, is unreasonable, grotesque and absurd. Whatever the necessities of an exceptional case like Hutchinson, which we may assume to be the excuse for the act, we would be recreant to our duty did we not declare that this act is repugnant to the constitutional provisions of section 17 of article 2 of the constitution.

It was a great misfortune, when it became manfest that the courts of the justices of the peace were inadequate to furnish a satisfactory system for administering primary justice in the larger cities of the state, that the legislature saw fit to relieve the situation by piecemeal in the enactment of special laws. The vice of the justice of the peace system is state-wide, and the granting of relief to the larger cities by special acts has greatly postponed the relief to which the state as a whole is entitled. The larger cities, already supplied with city courts, naturally have little concern in the wider undertaking

of general reform in the administration of the law in primary courts. (Attorney-general's Biennial Report, 1911-1912, pp. 17, 18.)

But uniformity in the administration of justice is imperative if even-handed justice is to be administered in this commonwealth. It was to check the growing mischief of special legislation that the final responsibility of determining the uniformity clause of the constitution was taken from the legislature and imposed upon the courts. It was said of France before the Revolution that a traveler changed laws every time he changed horses in journeying from Calais to Marseilles. We must all do our part to prevent the growth of such a ridiculous legal and judicial system in Kansas. If the constitutional mandate is courageously and consistently enforced there is no danger of its establishment here.

This court on various occasions has construed and applied the amendment of 1906; and but few special acts and none which violate the uniformity clause of the constitution affecting the substantive law and procedure for the administration of justice have been countenanced since its adoption. (*Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583; *Gardner v. The State,* 77 Kan. 742, 95 Pac. 588; *Deng v. Scott County,* 77 Kan. 863, 95 Pac. 592; *The State v. Nation,* 78 Kan. 394, 96 Pac. 659; *The State v. Nelson,* 78 Kan. 408, 96 Pac. 662; *The State v. Hutchings,* 79 Kan. 191, 98 Pac. 797; *The State v. Lawrence,* 79 Kan. 234, 246, 247, 100 Pac. 485; *Board of Education v. Davis,* 87 Kan. 286, 123 Pac. 885; *Gustafson v. McPherson County,* 88 Kan. 335, 128 Pac. 186; *Railway Co. v. Neosho County,* 89 Kan. 209, 131 Pac. 581. See, also, *In re Hendricks,* 60 Kan. 796, 57 Pac. 965.)

While the act under consideration is couched superficially in general terms, the peculiar restrictions of its application dependent upon population of counties and of cities within such counties, inclusion and exclusion of cities, inclusion and exclusion relative to judicial districts, inclusion and exclusion dependent upon popular vote, all demonstrate that it is intended to operate only in Reno county and possibly one or two others. It is therefore special legislation. (*Rambo v. Larrabee,* 67 Kan. 634, syl. ¶ 4, 73 Pac. 915; *Board of Education v. Davis,* 87 Kan. 286, 291, 292, 123 Pac. 885.) In all such cases,

where the state challenges the validity of an act, or the exercise of official power under it, the justification devolves upon the respondent. (*The State, ex rel., v. Fair Association,* 89 Kan. 238, 246, 131 Pac. 626.)   This has been the law from time immemorial. (*King v. John Arundel,* Year Books, 30 & 31 Edw. I [1302], 220; *King v. Burgesses of Lancaster,* Year Books, 30 & 31 Edw. I [1302], 222; *King v. Fissekyr,* Year Books, 30 & 31 Edw. I [1302], 224; *Rex v. Leigh,* 4 Burrow's Rep. [8 George III] 2143-2145; *The King v. Hill,* 4 Barn. & Cress. [6 George IV] 426-432; *Rex v. Boyles,* 2 Raym. [3 George II], 1559; *The Case of the Abbot of Strata Mercella,* 5 Coke [33 & 34 Eliz.], 40; *Partridge's Case,* 2 Leonard [30 Eliz.], 212; *Sir Jervis Clifton's Case,* 1 Goboldt [28 & 29 Eliz.], 93. See, also, 3 Bouv. Inst. p. 320 *et esq.;* 6 Comyn's Dig. p. 163 *et esq.;* 5 Bac. Abr. p. 173; 1 Tidd's Practice, p. 654.)

No justification for this special act is shown, and none can be judicially conceived. It violates the uniformity clause of the state constitution.   It attempts to cover subjects which not only can be governed by general laws but which have been governed by general laws since the foundation of the state, and is clearly at variance with the provisions of section 17 of article 2 of the state constitution.

The reluctance of this court to declare an act void on account of a defective title is well known. Perhaps another and more serious question is also involved.   Section 16 of article 2 of the constitution provides that no bill shall contain more than one subject.   In this act we have: (*a*) the establishment of the court and its jurisdiction and procedure; (*b*) changes in the substantive law of the state; (*c*) changes in the laws of the election of officers of city courts wholly unrelated to the courts to be established under this act.   Whether these three main *topics* are so germane or pertinent to each other as to constitute one subject is worthy of study and reflection but need not be decided.

Since we have seen that this act (Laws 1915, ch. 196) is clearly violative of section 17 of article 2 of the constitution, it follows that the judgment of the district court must be reversed, with instructions to enter judgment for the state. It is so ordered.