No. 36,476

THE STATE OF KANSAS, ex rel. A. B. MITCHELL, as Attorney General, etc., et al., *Plaintiff,* v. ANDREW F. SCHOEPPEL, as Governor, etc., *Defendant.*

(162 P. 2d 80)

Opinion filed October 6, 1945.

*A. B. Mitchell,* attorney general, *Leon W. Lundblade,* assistant attorney general, *S. M. Terbovich,* county attorney, and *William K. Ward,* assistant county attorney, were on the briefs for the plaintiff.

*C. H. Hobart,* assistant attorney general, and *J. E. Schroeder,* of Kansas City, were on the briefs for the defendant.

The opinion of the court was delivered by

SMITH, J.: This is an original action in quo warranto brought in the name of the state on the relation of the attorney general to de-

termine the validity of chapter 175 of the Laws of 1945. There is no dispute about the facts. The matter is presented on the pleadings.

Prior to the 1945 session of the legislature the business of conducting elections in areas outside the limits of certain incorporated cities was under the supervision of officials designated by the county clerks of the various counties. The statutes provided for election commissioners in certain cities to be appointed by the governor of the state. Chapter 175 of the Laws of 1945 was senate bill 182. Its general purpose when introduced was to provide for the appointment of a commissioner of elections by the governor in Wyandotte, Sedgwick and Shawnee counties who would have all the power and jurisdiction over elections in their respective counties theretofore exercised by county clerks, city election commissioners and township officers.

Section 1 of the chapter provided in part as follows:

"That in counties of this state having a population in excess of eighty thousand inhabitants, there is hereby created the office of commissioner of elections, which shall be in charge of a county election commissioner who shall be appointed by the governor."

As thus drawn, the bill passed the senate. Had it finally been enacted with the above provisions it would have applied to Wyandotte, Sedgwick and Shawnee counties, where Kansas City, Wichita and Topeka are located. When the bill reached the house the foregoing section was amended so as to read:

"That in counties of this state having a population in excess of one hundred thousand inhabitants and having an assessed valuation of less than $150,000,000, there is hereby created . . ."

The effect of this amendment was to restrict application of this bill to Wyandotte county.

About the time for the bill to become effective it appeared that there was a question as to its validity. Unless the bill was invalid it became the duty of the governor to appoint a county election commissioner on July 1, 1945. Since there was a question, the attorney general brought a quo warranto action in which he set out the general provisions of the bill, alleged that the governor was about to make an appointment pursuant to it and pleaded several particulars in which the bill violated the state constitution. The prayer was that this court decide whether the bill violated the constitution and if we should hold that it did that we oust the governor from acting pursuant to it.

The governor answered admitting that he was about to act pursuant to the provisions of the bill and joined with the plaintiff in praying for a decision as to its constitutionality.

Up to this stage of the case there had been no dearth of lawyers in the action. It was brought by the attorney general in the name of the state. The petition was filed by the attorney general himself and one of his assistants. The answer was filed by a member of the bar of Kansas City, Kansas, and an assistant attorney general. No issue of fact was raised by the pleadings. Briefs were filed and the cause was submitted without argument. A few days before the cause was submitted the county attorney of Wyandotte county asked for and was granted permission to be made a party plaintiff and to file a supplemental petition and a brief. He did file a petition in which he referred to the petition filed by the attorney general and in which he made allegations substantiating and elaborating on those in that petition. He also filed a brief in which he argued the points raised in his petition.

The petition pleaded several particulars in which the bill violated the state constitution. In view of the conclusion we have reached it will be necesary for us to consider one only.

Both petitions pleaded that the bill violated article 2, section 17 of the constitution. That article provides as follows:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

We have seen that this act applies to Wyandotte county only. Shawnee county is taken out by the provision as to population, and Sedgwick by the provision as to assessed valuation. In view of this, does the act violate section 17 of article 2? Is it what is commonly known as special legislation? If it is special legislation, is the situation such that this is a case where a general law cannot be made applicable? That a valid statute may be passed which does not operate upon all the citizens alike is conceded. A familiar example of that is the statutes that are made to apply to cities of different classifications, that is, the first, second and third class cities. However, where there is a classification as to the application of a statute it must operate uniformly upon all members of the class and the classification must not be arbitrary or capricious.

See *Barker v. Kansas City*, 149 Kan. 696, 88 P. 2d 1071, and *State v. Butler County*, 77 Kan. 527, 94 Pac. 1004. In other words, the classification must be germane to the subject matter of the statute and must be based upon a real and substantial distinction. See *State, ex rel., v. Allen County Comm'rs*, 156 Kan. 248, 133 P. 2d 165, also *Berentz v. Comm'rs of Coffeyville*, 159 Kan. 58, 152 P. 2d 53. The subject matter of the statute in question is the regulation of elections in rural territory adjacent to or located in the same county as large cities. We are familiar with the fact that the three counties in the state which contain its larger cities, that is, Wyandotte, Sedgwick and Shawnee, are confronted with problems which do not confront the other one hundred and two counties of the state. Adjacent to the cities located in these three counties, large thickly populated rural communities have grown up which require a more strict supervision of elections than is ordinarily had in the rural communities of the state. The trouble is, however, it is hard for us to see any real basis for a distinction between Wyandotte county on one hand and Shawnee county and Sedgwick county on the other. Had the statute been enacted so that it would apply to all three of the most thickly populated counties we would have a somewhat different question. However, the chapter as finally enacted by the legislature was the result of the determination of Shawnee county and Sedgwick county not to come within its terms. We can see no relationship between the assessed valuation in a county and the control of rural voting. Neither do we see any relationship between the difference in population of 80,000 and 100,000 and a control of rural voting. We are forced to the conclusion that the classification in this case which makes the statute apply to Wyandotte, and Wyandotte county only, is an arbitrary one and that it cannot be sustained under the provisions of article 2, section 17 of the constitution of the state. Therefore, there must be judgment for the plaintiff. It is so ordered.