No. 36,679

THE STATE OF KANSAS, ex rel. S. M. TERBOVICH, as County Attorney, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, THE KANSAS CITY PUBLIC SERVICE COMPANY, and THE WYANDOTTE RAILWAYS COMPANY, *Defendants*.

(171 P. 2d 777)

Opinion filed July 24, 1946.

*S. M. Terbovich,* county attorney, argued the cause for the plaintiff.

*J. E. Schroeder,* county counselor, argued the cause for defendant Board of County Commissioners.

*Thomas J. Van Cleave,* of Kansas City, and *James E. Smith,* of Topeka, argued the cause, and *Powell C. Groner* and *John R. Moberly,* both of Kansas City, Mo., were on the briefs for defendants Kansas City Public Service Company and The Wyandotte Railways Company; *E. S. McAnany, B. W. Alden, T. M. Van Cleave, W. L. Phillips,* all of Kansas City, and *I. N. Watson, H. N. Ess, Paul V. Barnett, C. E. Whittaker* and *E. L. Marshall,* all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

PARKER, J.: This is an original civil proceeding in the nature of quo warranto, brought by the state of Kansas on the relation of the county attorney of Wyandotte county against the board of county commissioners of Wyandotte county, hereafter referred to as the board, and the defendants, Kansas City Public Service Company, a Missouri corporation, and the Wyandotte Railways Company, a Kansas corporation, hereinafter referred to as the corporations, the owners and operators of the local transportation system in Kansas City, Kan., and Kansas City, Mo., to test the validity of a contract entered into between the board and such corporations with respect to the use by the latter of two county bridges and the compensation to be paid the county by them for that privilege.

The primary question involved in the case is the constitutionality of chapter 278 of the Laws of 1945, now G. S. 1945 Supp. 68-1223 and 68-1224. For that reason, unless and until the Act itself be found valid, brief reference to the detailed factual picture disclosed by the lengthy petition, the answer of the board and the joint answer of the defendant corporations, is all that is necessary or required. This is especially true in the instant suit because the challenged agreement provides ". . . the parties hereto are entering into this agreement pursuant to the terms and provisions of said 1945 act of the Legislature of Kansas as respects the con-templated operations of Service Company upon and over the James street and Twelfth street bridges, rather than pursuant to the terms and provisions of said earlier statutes. . ." and it must be con-ceded the validity of such contract can rise no higher than that of the statutory enactment under which it originated.

Briefly the facts essential to our decision can be stated thus:

For many years prior to 1942 Wyandotte county owned and maintained a bridge across the Kansas river at James street, in Kansas City, Kan., devoted to public use, accommodating vehicular and pedestrian traffic and on which were double street railway tracks used by the corporations in the operation of their street rail-way system. In that year, on account of its condition, the James street bridge was closed to traffic and the board began and has since completed its reconstruction under authorization of article 14, chap-ter 68, G. S. 1935. Since 1942, although so reconstructed as to per-

mit its use for streetcar service, the corporations have not used such bridge in the operation of their street railway system for the reason arrangements for the connection of their railroad tracks with those now on the county structure as completed have not been consummated.

Prior to April 12, 1945, Wyandotte county also owned and maintained a bridge across the Kansas river at Twelfth street. It also was devoted to public use and accommodated vehicular and pedestrian traffic. In the operation of their motor busses the corporations made use of this bridge in the same manner as other persons operating motor vehicles but did not operate streetcars over and across it because it was not equipped for street railway service. On the date last above mentioned a portion of the Twelfth street bridge collapsed, whereupon it was closed and has not since been in use. The board is now about to begin reconstruction of such structure. It does not propose to make provision for the location of railway tracks thereon but contemplates its use by the corporations in the operation of their motor and trolley busses.

On or about the 8th day of April, 1946, the defendants entered into a contract whereby the board granted to the corporations the use of the railroad tracks on the James street bridge and the privilege of operating streetcars over that edifice in consideration of payment of compensation by the latter on a monthly rental basis of a portion of the cost of the reconstruction of such structure in the manner and in amounts authorized by chapter 278, *supra,* and, in addition granted them the right to operate their motor and trolley busses over the roadways of both the James street bridge and the Twelfth street bridge when constructed without charge and on the same basis enjoyed by all other vehicles and operators of vehicles using such bridges, including the right to install and maintain such overhead wiring and other equipment as might be necessary for the operation of trolley busses.

The proceedings leading up to the execution of the contract are conceded to conform to the requirements of chapter 278, *supra,* and are not in question if the Act itself is valid.

It is likewise conceded that the equipment required for the operation of trolley busses upon either or both of the bridges involved is not of such nature as will in any way or to any extent interfere with the use of such structures by the general public or the operators of other vehicles, either public or private, and that the in-

stallation thereof by the corporations at their own expense, as permitted by the contract, will not in any manner or to any extent require the expenditure by the county of any greater sums in the construction, reconstruction, improvement, or maintenance of such bridges.

Shortly after the contract was signed by the parties this suit questioning the power of the board to execute it was commenced and performance of its terms is now held in abeyance until that question can be judicially determined.

With the pleadings disclosing facts in substance as heretofore related the plaintiff filed a motion for judgment on the pleadings which the parties agree raises the following legal questions: (1) Is chapter 278 of the Laws of 1945 a special act in a case in which a general law could be made applicable and therefore in violation of section 17 of article 2 of the constitution of Kansas? (2) Is such chapter in fact an amendment to the provisions of G. S. 1935, 68-1404 and 68-1409 within the meaning of section 16 of the state constitution, and since it does not expressly purport to amend such sections is it for that reason unconstitutional? (3) Does the title of the chapter clearly express the subject of the act as required by section 16 of article 2 of the constitution of Kansas? (4) Do the provisions thereof apply to bridges constructed under chapter 68, article 14, G. S. 1935? (5) Can the county permit a street railway company to operate (a) motor busses and (b) trolley busses over a county bridge without payment of compensation for such use? We will give consideration to the questions in the order in which they are above stated but first reference should be made to provisions of the statute which have to do with their decision.

Turning to the act (Laws of 1945, ch. 278) which—for purposes of emphasis we repeat—is the one relied upon by the contracting parties as authority for their agreement and the action contemplated by its terms, we note its title reads:

"An act relating to the construction, reconstruction, improvement or relocation of bridges and the approaches thereto in certain counties."

The first few sentences of its first section provide:

"The board of county commissioners *of any county having a population of . more than one hundred and thirty thousand and an assessed valuation for taxation purposes of less than one hundred and fifty million dollars is hereby authorized to enter into contracts with any* county, township, city, drainage district, municipality, person, company, or *corporation,* located within or without this state, *for the* construction, reconstruction, improvement, removal, re-

location, maintenance, regulation or *use of any* bridge and the approaches thereto, *constructed or reconstructed under this act,* and if such contract shall be entered into between any board of county commissioners of such county and any other county, township, city, drainage district, municipality, person, company or corporation, as to the construction, reconstruction, improvement, removal, relocation, maintenance, regulation or *use* of any such bridge and the approaches thereto, *then such commissioners shall not issue the bonds of the county* for a greater amount on account of the construction, reconstruction, improvement, removal or relocation of any such bridge and the approaches thereto, than the cost thereof, after deducting therefrom the amount paid or agreed to be paid by such other county, township, city, drainage district, municipality, person, company or corporation . . ." (Emphasis supplied.)

Other portions of such section pertinent to our purposes are:

". . . *No street railway* or other railway company *shall* construct, lay or maintain any tracks upon or *use for the transportation of passengers or freight any bridge* and the approaches thereto constructed, *reconstructed* or improved *under the provisions of this act without first paying to the county* constructing, reconstructing or improving the same *not less than twenty percent of the net cost* to the county *of such reconstruction* or improvement, *and no other person or corporation shall use such bridge or the piers thereof for any private use without paying to the county constructing or reconstructing the same such sum as the county commissioners thereof shall require as compensation for such use.* . . . In constructing, reconstructing, improving or relocating any such bridge and the approaches thereto, heretofore or hereafter, the board of county commissioners shall have power to install tracks therein or thereon with proper appurtenances thereto, or to provide space therefor, and may from time to time contract for the use of such tracks and appurtenances, or of such space, for street railway or railroad purposes upon such terms as may appear to the board of county commissioners to be just and reasonable, including compensation for such use on a flat lump-sum basis, which shall be not less than twenty percent of the net cost of such construction or reconstruction of such bridge and the approaches thereto or on a monthly rental basis, which shall be not less than one-twelfth of twenty percent of the annual interest charge on the bonds issued for such purpose and one-twelfth of twenty percent of the principal of the bonds to be retired each year, such payments to be made in equal monthly installments . . ." (Emphasis supplied.)

On the date of the enactment of the act from which we have just quoted there was in force and effect in this state chapter 68, article 14, G. S. 1935, dealing with the reconstruction and construction of bridges in cases where, as here, the drainage district possessing the authority had taken steps resulting in the county having to change or reconstruct structures of that character. We are, of course, not concerned with the construction of a new bridge or bridges and for that reason no reference to sections of the chapter pertaining to

them is necessary. However, a different situation prevails with respect to reconstruction and certain sections of such article applicable to that situation should be noted. One (68-1401) provided for the reconstruction of bridges in counties having an assessed valuation for taxation purposes of over ninety million dollars and authorized the issuance of bonds for the purpose of paying for such improvements. Another (68-1402) prescribed the procedural steps to be followed by the governing body of the county prior to the letting of contracts for such improvements. Another (68-1403) expressly authorized the county to issue negotiable bonds as provided by law to pay for costs of reconstruction. Still another (68-1404) authorized the board of county commissioners to enter into contracts with third persons, including street railway corporations, for the joint reconstruction of such improvements upon payment of one-half of the total cost thereof.

In fact it can be said the first section of chapter 278, *supra*, except for the last quoted paragraph thereof, and the limitation making it applicable to counties "having a population of more than one hundred and thirty thousand and an assessed valuation for taxation purposes of less than one hundred and fifty million dollars," and the change permitting street railway companies to use bridges reconstructed by the county upon payment of twenty percent of the net cost of reconstruction instead of one-half of such cost, is identical in form and substance to section 68-1404 and does not purport to affect any of the other mentioned sections or be affected by them. Moreover, it does not expressly repeal or amend such section or any of the other sections to which we have referred. When analyzed its practical effect is to add to the provisions of section 68-1404 already in force and effect, limit the scope of its operation and reduce the amount of compensation to be paid by street railway companies for use of the improvements therein specified.

With pertinent facts and applicable statutory provisions outlined we turn now to consideration of the questions heretofore listed.

The state's position on the first question is that chapter 278 violates section 17 of article 2 of the constitution which reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

It points out and the defendants admit that by virtue of the limitation in the act it now applies only to Wyandotte county and that in view of the present population and assessed valuation for taxation purposes of the other counties of the state there is very little likelihood of its provisions ever becoming applicable to any of them. It asserts also, and defendants do not dispute it, that the subject of the act is of such nature as to permit the enactment of a general law and does not require special legislation to accomplish its purpose. In such circumstances there can no longer be any question as to the rule under our decisions. While the legislature has power to pass a law which applies to and operates uniformly on all members of a class without violating the mandate of the constitution the classification so created must be natural and genuine and based upon distinctions which have a reasonable and substantial relation to the subject matter involved in order for such law to be upheld as general in nature. On the other hand, if the classification attempted by its provisions is arbitrary, illusory, capricious or fictitious, the entire enactment is stricken down as being within the inhibition of the constitutional provision. See *State, ex rel., v. Schoeppel,* 160 Kan. 396, 162 P. 2d 80; *Berentz v. Comm'rs of Coffeyville,* 159 Kan. 58, 152 P. 2d 53; *State, ex rel., v. Allen County Comm'rs,* 156 Kan. 248, 133 P. 2d 165; *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 1071; *Ashley v. Wyandotte County Comm'rs,* 121 Kan. 408, 247 Pac. 859; *Patrick v. Haskell County Comm'rs,* 105 Kan. 153, 181 Pac. 611; *State, ex rel., v. Deming,* 98 Kan. 420, 158 Pac. 34 and *Board of Education v. Davis,* 87 Kan. 286, 123 Pac. 885.

Defendants recognize the rule as applicable to legislation of the character here involved, but insist that so far as chapter 278 is concerned the classification features are germane to the subject matter and the object to be accomplished by its terms and based upon a distinction which is real and substantial. In support of their position they ingeniously contend—in fact the gist of their principal argument is—that since statistics disclose the per capita assessed valuation of Wyandotte county is less than it is in the other large counties of the state, and that county has fewer private passenger automobiles in proportion to its population than such other counties it necessarily follows there is more dependence on public transportation facilities in such county, and more need for the furnishing of public transportation service to its population at

a lower cost than elsewhere in the state, and that that situation in itself furnishes the real and substantial distinction which makes the Act general rather than special in character. In addition they argue the same conclusion is warranted because Wyandotte county happens to be the only large county in the state having street railway service and which, because of the course of the Kaw river, must depend to a greater extent than any other county upon the use of bridges in order to travel from one portion of the city to another and to communicate with Kansas City, Mo.

The foregoing argument would be especially apropos if made in support of a claim the enactment in question is special in character and therefore valid, but it is difficult for us to see where it supports defendants' position. If accepted as the test for determination of whether legislation as enacted is general in nature and of uniform operation throughout the state it would simply mean that hereafter whenever the legislature is confronted with any unusual situation, peculiar to one township, city or county, all it needs to do to circumvent the identical thing the constitutional provision as adopted in 1906 was intended to prohibit—namely, the enactment of special legislation under the guise or disguise of general laws—would be to confine the operation of contemplated legislation on the basis of assessed valuation and population to the particular governmental agency affected. Obviously such laws when enacted would be the very ones the people, by mandate of the constitution, have expressly directed the courts to overthrow as invalid.

We fail to find anything in the facts disclosed by the record or presented in the argument of defendants which presents a sound or substantial reason for restricting the application of the law here involved to one particular county of the state. And this is true even though due consideration has been given to the purposes sought to be accomplished by its provisions. In our opinion the classification attempted cannot be justified on the theory it is germane to the subject matter or based upon a real and substantial distinction. It necessarily follows such classification is, to say the least, an arbitrary one and the petitioner's claim the entire act is invalid because it violates section 17, article 2, of the constitution, must be sustained.

The conclusion just reached might well end this lawsuit for, as has been heretofore indicated, a contract which by its express terms depends upon a statute for validity falls of its own weight

when that statute is found to be invalid. To say the least, it is no longer imperative to consider other questions raised by the parties since their decision will not affect the result. Be that as it may, consideration of such questions can do no harm and may result in some benefit to the litigants and to the public in general. For that reason they will be given attention.

Much has been said on the subject of when a new law violates that portion of section 16, article 2, providing "no law shall be revived or amended, unless the new act contain the entire act revived or the section or sections amended, and the section or sections so amended shall be repealed," and we do not propose to enter upon a prolonged discussion of the effect of our decisions pertaining thereto. However, it can be stated as a general proposition such decisions uniformly hold that when it clearly appears the legislature has deliberately set out to amend or repeal a specific statute or one of its sections the language just quoted is mandatory and invalidates all acts passed by that body in contravention of its terms. Our view is, an examination of the language to be found in chapter 278 clearly indicates an intention on the part of its enactors to amend the provisions of chapter 68, article 14, G. S. 1935. The absence in the new enactment of any provision authorizing the issuance of bonds or providing procedure for the letting of contracts for the improvements therein referred to is but one of several convincing indications of its amendatory character. The exclusion of certain localities from the operation of a general law already in force and effect is another. Of a certainty, and conceding the last portion of section 1 thereof, as heretofore quoted, is new and perhaps supplemental, it is idle to urge that the other quoted portions thereof do not amend certain provisions of the old law by authorizing the use of county bridges by the corporations upon payment of one-twentieth of the net cost instead of one-half of such net cost as theretofore required. The matters just mentioned, without regard to others which might be touched upon, are sufficient in themselves to compel the conclusion the act transgresses the heretofore quoted provision of the constitution.

With respect to the third question the state contends the title of chapter 278 does not clearly express its subject and therefore violates the first clause of section 16, article 2, providing "no bill shall contain more than one subject, which shall be clearly expressed in its title." That position cannot be sustained. True

enough, the title could have been more clearly expressed but we deem its phraseology sufficiently broad and comprehensive to cover the matters treated in the body of the act, including matters pertaining to both cost and use of the improvements therein specified.

No useful purpose would be served by further consideration of question four. Besides, our views regarding it have already been indicated in our discussion of other questions.

What has been stated in the preceding paragraph applies with almost equal force to question five. Inasmuch as the statute and the contract involved in the action have been held to be invalid the legal proposition therein raised simply is not here and whatever we may say on the subject will be pure dictum. Nevertheless, we are impelled to remark that if called upon to construe the provisions of chapter 278 as a valid enactment we would not be impressed with the state's contention the phrase "No street railway or other railway company shall construct, lay or maintain any tracks upon or use for the transportation of passengers or freight any bridge and the approaches thereto constructed, reconstructed or improved under the provisions of this act without first paying to the county constructing, reconstructing or improving the same not less than twenty percent of the net cost to the county of such reconstruction or improvement, and no other person or corporation shall use such bridge or the piers thereof for any private use without paying to the county constructing or reconstructing the same such sum as the county commissioners thereof shall require as compensation for such use," compels a conclusion the defendant board would thereby be required to charge the corporations for the use of county bridges when used by them as public thoroughfares on the same basis other vehicles and operators of vehicles use such structures. On the contrary, we are inclined to the view that as applied to the defendant corporations such language has reference to the installation of streetcar tracks and other similar equipment on and upon such bridges when deemed necessary to the conducting of the business in which they are engaged and not to rights possessed by them in the use of those structures as members of the traveling public.

For the reasons stated in this opinion the plaintiff's motion for judgment on the pleadings should be sustained. Judgment is therefore rendered accordingly.