No. 32,655

THE CITY OF ATCHISON, *Appellant*, v. M. BECKENSTEIN, *Appellee* and *Cross-appellant*.

(54 P. 2d 926)

Opinion filed March 7, 1936.

*Z. E. Jackson* and *G. W. Foley*, both of Atchison, for the appellant.

*Ralph U. Pfouts*, of Atchison, and *E. R. Sloan*, of Topeka, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a criminal prosecution under a cleaning and pressing ordinance of the city of Atchison.

The material facts are: Defendant lived at St. Joseph, Mo. A. S. Winetraub was engaged in the dry-cleaning business in Kansas City, Mo. Winetraub, by written contract, employed defendant as his agent to solicit and obtain business for him at Atchison. The contract provided in substance: Defendant was to solicit such business, collect the clothing at a central depot in the city of Atchison, trans-

port it to Winetraub's place of business in Missouri for processing; it was then to be returned to the central depot in Atchison, where it could be called for by owners or distributed to them by defendant; defendant was required to keep a record of clothing handled, to collect for services and remit to Winetraub; Winetraub was required to furnish defendant with a schedule of prices from time to time; for the time being it was agreed the location of the central depot at Atchison was to remain at the place on which defendant had taken a lease in his own name; if business justified, Winetraub was to supply such help as might be required; defendant was to render such services in transporting cleaning work as Winetraub required; defendant was to receive a weekly salary of twenty percent.

It appears defendant had assigned the lease, before any business was transacted, on the central depot to Winetraub, or Lyon Cleaners, the latter being the name under which Winetraub operated. Defendant had been operating several days when he was arrested. Other facts might be narrated, but the above are sufficient to present the general plan of operation.

Defendant was charged in three counts with alleged violations of three separate sections of the same ordinance. He was convicted and fined on each of the three counts in the police court of the city of Atchison. From that judgment he appealed to the district court. The case was tried to the court without a jury. Following the introduction of the city's evidence, defendant moved to be discharged for the reason the ordinance was void, illegal and unconstitutional. The motion was sustained as to counts two and three, and overruled as to count one. The city objected to the ruling on counts two and three and reserved the questions of law involved in that ruling. Both parties have appealed. Defendant contends the city's appeal on counts two and three must be dismissed, and that the business conducted was interstate commerce, hence not subject to regulation by city ordinance. In the view we take of this case, it is unnecessary to treat any questions presented other than the constitutionality of the ordinance.

The prosecution was based on sections 1, 2 and 5 of the ordinance. Count 1 pleaded a violation of section 1, count 2 of section 2, and count 3 of section 5. Those sections read:

"SECTION 1. That any person, firm, partnership or corporation engaged in soliciting, taking orders, delivering or furnishing cleaning, dry cleaning or pressing, in connection with the business commonly known as 'dry cleaning' in the city of Atchison, shall pay an annual license fee of ten dollars ($10); said

license to be issued in the name of the applicant therefor, and to be nontransferable. In the event the applicant shall be a partnership the names of the partners shall be stated in the application: *Provided,* That any change in the personnel of said partnership other than by death shall automatically act as a termination of said license: *Provided further,* That, in the event the applicant shall be a domestic corporation no license shall be issued until a charter shall have been granted; and if a foreign corporation such license shall not be issued until such corporation shall have been duly authorized to do business in this state, in the manner provided by law."

"Sec. 2. That no person, firm, partnership or corporation engaged in soliciting, taking orders, delivering or furnishing cleaning, dry cleaning or pressing, in connection with the business commonly known as 'dry cleaning' in the city of Atchison, shall remove any article delivered into their custody from the county of Atchison, until there shall have been filed with the city clerk a bond to the city of Atchison for the use and benefit of any and all persons having claims for loss or damage under this section, executed by said person, firm, partnership, or corporation as principal and by some surety company authorized to do business in the state of Kansas, as surety, in the sum of twenty-five hundred dollars ($2,500) conditioned that the principal will return such property to the owner thereof within five (5) days of the date of its removal from Atchison county, and for the payment to the owner of all damages to or loss of said property; which bond shall be approved by the board of commissioners before the license is issued."

"Sec. 5. That before any person, firm, partnership or corporation which solicits, takes orders, delivers, or furnishes cleaning, dry cleaning or pressing in the city of Atchison, shall remove any article delivered into its custody from Atchison county, Kansas, such person, firm, partnership or corporation shall file with the city clerk of the city of Atchison a written statement which shall give a description of the article or articles so to be taken from the city of Atchison, the name and address of the owner thereof, the place to which such article is being removed, and the date when it is to be returned, which statement shall be dated as of the date such article is removed, and subscribed on behalf of the person, firm, partnership or corporation by the person so removing such article."

Defendant contends the ordinance violates the fourteenth amendment to the constitution of the United States. The pertinent portion thereof reads:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Does the ordinance discriminate between a business operated outside the county and one conducted within the county?

Section 1 requires payment of a license fee from all who are engaged in soliciting or furnishing the service. Standing alone this section is therefore not discriminatory.

Section 2 in its operation results in classification of business. This classification distinguishes between business which moves clothing to a destination outside the county for processing, and local business, which performs the service within the county. It burdens the former class with the posting of a particular kind of bond, to wit: a surety company bond, and in the sum of $2,500. The bond shall guarantee the return of wearing apparel in five days, irrespective of whether the owner requires a return within that period or not. The bond must guarantee the payment of all damages to or loss of property. The bond must satisfy not the owner of the clothing but the board of commissioners. The license required by section 1 cannot be obtained prior to compliance with section 2.

Section 5 places an additional burden on the first classification by requiring a detailed listing with the clerk of every article and other detailed information before the clothing may be removed from the county.

While there is no prosecution for violation of section 3 of the ordinance, a portion of it will assist in disclosing the general nature of this ordinance, and the indivisibility of it. In part, section 3 reads:

"That before any license shall be issued to any person, firm, partnership or corporation as herein provided such applicant therefor shall file with the city clerk an application which shall set forth the exact location where such cleaning, dry cleaning or pressing will be done, together with a full statement of the plan of operation and method of doing business which applicant proposes to conduct; and such other information said commissioners may require; . . ."

Analysis of the ordinance in its entirety readily discloses a license cannot be obtained by a business operated outside the county by complying only with section 1 of the ordinance. Compliance with sections 2, 3 and 5 is a prerequisite to the issuance of the license. The city itself would have violated the ordinance, had it issued a license to defendant without first insisting upon compliance with each and all of the sections mentioned. The sections of the ordinance are interrelated and clearly indivisible. The trial court discharged defendant on counts two and three, based on sections 2 and 5, on the ground those sections were unreasonable. The city complains of that ruling, but insists the conviction on count one must be sustained even though sections 2 and 5 are invalid. That contention is based on section 7 of the ordinance, which reads:

"SEC. 7. That if any terms or provisions hereof shall be held to be unreasonable, illegal, unlawful, *ultra vires* or void, the same shall not in any manner

be construed to annul, render void, or make ineffective any other provision or requirement of this ordinance."

Were the ordinance divisible, there might be some merit in the contention. The ordinance being indivisible, the contention is not sound. To hold otherwise would mean defendant could be convicted for failure to comply with certain prerequisites to the obtaining of the license, which prerequisites are void. Such a position is obviously untenable.

If sections 2 and 5 are unconstitutional the conviction cannot be sustained on count one. That the ordinance discriminates between classifications of business is patent on its face.

Does it violate the fourteenth amendment to the constitution of the United States? The general principle involved in this inquiry is not new in this state. It received the thorough consideration of a divided court in the case of *In re Irish*, 121 Kan. 72, 250 Pac. 1056. In the dissenting opinion by Justice Dawson it was, in part, said:

"Whether an exercise of legislative power 'is flagrantly unjust, unreasonable or oppressive' (*Desser v. City of Wichita*, supra) is a question which in the nature of things must be broadly addressed to the judicial conscience. In pretending to exact a tribute of $150 per annum from nonresidents of Holton for the right to sell bread in that little city, the ordinance grossly offends against my sense of justice and good faith. The only evidence presented to us shows such an exaction will amount to virtual prohibition. It may be said that this evidence is the mere conclusion of the witness. It is also my conclusion—one I draw by taking judicial notice of the pertinent facts and circumstances. I am persuaded this provision of the ordinance will never bring one legitimate dime into the city' treasury, and I cannot persuade myself it was ever intended to do so. . . . I hold the tax unjust, unreasonable and oppressive; and if in its practical operation it does amount to prohibition, as I believe and as time will certainly demonstrate, it is violative of both the state and federal constitutions. (Const., art. 12, sec. 5; U. S. Const., 14th Amend.; *City of Lyons v. Cooper*, 39 Kan. 324, 18 Pac. 296; *In re Chipchase, Petitioner*, 56 Kan. 357, 43 Pac. 264; *State v. Wilson*, 101 Kan. 789, 792, and citations, 168 Pac. 679.)" (pp. 74, 75.)

A rehearing was granted in *In re Irish*, 122 Kan. 33, 250 Pac. 1056, and in conformity with the former dissenting opinion, a united court held:

"An ordinance of a city of the second class which provides for a license fee of $150 a year to be paid by each person, firm, or corporation, *not a resident of the city*, who sells any bread or bakery products to any firm or corporation in the city and prescribes a penalty for the violation of the ordinance, *but does not provide for any license fee to be paid by residents of the city engaged in the same kind of business* is invalid because it violates

the fourteenth amendment to the constitution of the United States." (Syl. ¶ 2.) (Italics inserted.)

Later the decision in the Irish case was approved. (*Hair v. City of Humboldt,* 133 Kan. 67, 299 Pac. 268. In the Hair case there was only a partial discrimination as to a license fee. In that case it was said:

"An ordinance of a city of the second class which provides for a license of $1 a day or $10 a year for a person operating a bakery within the city from which bread and bakery products are sold, and $1.50 per day or $120 a year for a person selling bakery products therein and not owning or operating a bakery and having no bona fide place of business within the city, and which prescribes a penalty for the violation of the ordinance, is invalid because it · violates the fourteenth amendment to the constitution of the United States." (Syl. ¶ 2.)

The city in this case insists the Irish and Hair cases are not applicable to this case. We think otherwise. In the Irish case there was a discrimination against bakers *who were nonresidents of the city of Holton,* in the nature of a license fee, while none was exacted from resident bakers. In the Hair case there existed a discrimination in the nature of a larger license fee exacted from bakers *not owning or operating a bakery and having no bona fide place of business within the city of Humboldt.* The city contends there is no unjust or unreasonable discrimination in this case, in that all who solicit dry-cleaning business in the city of Atchison are required to pay the same license under section 1 of the ordinance, whether the processing is done within or outside the county. Were that the entire ordinance, there would be merit in the contention. This ordinance, however, is just as discriminatory and objectionable in principle as were the ordinances in the Irish and Hair cases, if not more so. The vice in this ordinance is in its regulatory provisions. It discriminates in the requirement of a surety company bond, the return of wearing apparel within a specified time, the supplying of lengthy data and reports. None of these requirements are made of local businesses. The discrimination as to the particular classification of business is based upon no real and substantial distinction. The classification is not a reasonable but an arbitrary one. It is based solely on location. In the Hair case, *supra,* it was said:

"In the ordinance we are now considering, those selling bakery products are classified as those owning and operating a fixed place of business in Humboldt and those not owning such a fixed place of business. Appellant argues that this is a *reasonable classification* and does not come under the rule in the Irish case. *We are not impressed with this distinction.*" (p. 70.)

Neither are we impressed with the attempted distinction in this case on the ground section 1 of the ordinance requires a license from all regardless of location, when the remainder of the indivisible ordinance arbitrarily discriminates against a business solely on the basis of its location.

In *In re Riley*, 39 Cal. App. 58, 177 Pac. 854, the headnote reads:

"License ordinance of town which discriminates between dyeing and cleaning businesses situated within and without town, discrimination being based solely on location of businesses, is void as attempt to enforce discrimination not based upon difference in nature of businesses transacted, etc."

In *Matter of Application of Hines*, 33 Cal. App. 45, 164 Pac. 339, it was said:

"We are of the opinion that the provisions of the ordinances under which petitioner has been convicted attempt to create and enforce a discrimination not based upon differences in the nature of the business being transacted or differences in the manner of conducting the same business, or any other difference *other than the mere fact of difference in destination of the goods collected and delivered by wagons collecting for laundries located outside of the city and the destination of goods collected for delivery to laundries within the city.* The license provisions in question are plainly devised as a protective tariff for the benefit of laundries located in the city of Venice or laundry wagons doing business with laundries located in the city of Venice, and apparently they have no other purpose." (p. 47.) (Italics inserted.)

The city further urges this court has held the regulatory provisions of an ordinance are not unreasonable as to a bond requirement (*Peoples Taxicab Co. v. City of Wichita,* 140 Kan. 129, 34 P. 2d 545), nor as to requirements of minute details of business operation (*City of Kansas City v. Garnier,* 57 Kan. 412, 46 Pac. 707; *City of Wichita v. Wolkow,* 110 Kan. 127, 202 Pac. 632). Those cases are not helpful here. First, each of them was decided upon a valid principle of genuine police regulation. Second, they were universal in their application. They apply to all engaged in the taxicab business and to pawnbrokers and secondhand dealers within the respective cities. They were not discriminatory as between classifications of a particular trade or business.

The city also relies much on the case of *Richmond Linen Co. v. Lynchburg,* 160 Va. 644, 169 S. E. 554. That case turns upon the subject of classification. In all deference to the opinion, it is not in harmony with the decisions of this court and we decline to follow it.

We hold this ordinance violates the fourteenth amendment to the constitution of the United States. It follows the judgment must be reversed as to count one and affirmed as to counts two and three. It is so ordered.