No. 34,523

MABEL McCULLEY et al., *Appellees,* v. THE CITY OF WICHITA et al., *Appellants.*

(98 P. 2d 192)

Opinion filed January 27, 1940.

*Vincent F. Hiebsch, Kenneth Pringle* and *A. V. Roberts,* all of Wichita, for the appellants.

*Austin M. Cowan, C. A. McCorkle, W. A. Kahrs, Robert H. Nelson* and *Henry L. Butler,* all of Wichita, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by Mabel McCulley and other residents of the city of Wichita engaged in the grocery business, under the declaratory-judgment act, to determine the validity of a city ordinance. In a second cause of action it was sought to enjoin its enforcement. The defendants were the city of Wichita and its officers. The trial court held the ordinance unconstitutional, and defendants have appealed.

The ordinance, No. 12-113, insofar as material, provides:

"AN ORDINANCE relating to the public health; providing certain hours for the retail sale of either cooked or uncooked perishable foods or foods subject to contamination when inspection is available and providing penalties for the violation of its terms.

"*Be it ordained by the board of commissioners of the city of Wichita, Kansas:*
. "SECTION 1. That from and after the effective date of this ordinance, it shall be unlawful for any person, firm or corporation engaged in the retailing of either cooked or uncooked perishable foods, or foods subject to contamination, to sell, offer for sale, or expose for sale such foods at any time other than the hours of the day and the days of the week when inspection of such foods and the places where such foods are sold is available by the health department of the city of Wichita, as is provided for in this ordinance.

"*Provided, however,* This ordinance shall not apply to foods cooked, baked, or prepared on the premises for immediate consumption on or off the premises.

"*Provided further,* This ordinance shall not apply to milk, ice cream and frozen deserts [desserts].

"SECTION 2. The term either cooked or uncooked perishable foods or foods subject to contamination when used in this ordinance shall apply only to such foods as are usually sold under the classification of provisions, groceries or meats.

"SECTION 3. Inspection by the health department of the city in all cases provided for in this ordinance shall be provided during the following hours: From Monday to Friday, inclusive, during each day from seven a. m. to six-thirty p. m.; Saturdays from seven a. m. to nine p. m.

"Section 4. Any person, firm or corporation violating any of the provisions of this ordinance shall be adjudged guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than ten dollars ($10) nor more than fifty dollars ($50) for each offense. Each day's violation shall constitute a separate offense.

"Section 5. If any section, subsection, or clause of this ordinance is held to be unreasonable or unconstitutional, it shall not affect the remaining portions of the ordinance which are reasonable and constitutional."

The petition further alleged:

"The [plaintiffs] have in the past held their stores open for the sale of foods of the type set forth in said ordinance at hours other than those specified in said ordinance, and that they desire to continue to do so, and if not permitted so to do will suffer irreparable damage, and that there is an actual controversy between [plaintiffs] and [defendants]. That the penalties provided for violation of the ordinance are so excessive that they violate the constitution of the United States and the constitution of the state of Kansas. That the ordinance deprives the [plaintiffs] of the equal protection of the law under the fourteenth amendment to the constitution of the United States and the constitution of the state of Kansas.

"(a) The ordinance is not a health measure; (b) classification is unreasonable; (c) the hours provided in the ordinance are unreasonable and constitute a discrimination; (e) the ordinance is discriminatory; (f) the ordinance is indefinite and uncertain . . . that the ordinance would not be enforced."

The prayer was for judgment holding the ordinance unconstitutional and in the alternative for a decree determining what foods actually came within the provisions of the ordinance.

The answer by general and specific denials put in issue every material averment of the petition. The answer and cross petition further alleged:

". . . Said ordinance attached to plaintiff's petition is a good, valid and subsisting ordinance of the city of Wichita and has to do with the protection of the public health, morals and well-being of the citizens of the city of Wichita, and its enforcement will aid in the protection of life, property, health, and morals. The purpose of said ordinance is to protect the citizens of the city against the spread of disease and to aid in the upbuilding of the health and good morals of the citizens and to aid in the enforcement of law and order, and to give further protection to life and property, and to aid the police of said city in the protection of life and property.

"That said ordinance was passed to limit the hours of the sale of goods, wares and merchandise mentioned in said ordinance and in the manner expressed in said ordinance to aid the citizens as heretofore stated. That said ordinance applies to each and every citizen of the city within its classifications and does not discriminate against any citizen of the city, and its provisions are wholly fair and reasonable. That under the terms of said ordinance pro-

hibition is made of the sale of goods, wares and merchandise of the first day of the week, commonly called Sunday, and does protect the health of the citizens in permitting a day of rest or recreation.

"The defendant, the city of Wichita, has upon its ordinance books an ordinance designated as ordinance No. 11-592, which ordinance has been in effect for a long period of time and is an ordinance in practically the wording of the statute of Kansas relative to the sale and the offering for sale of goods, wares and merchandise on the first day of the week, commonly called Sunday. The ordinance in question, insofar as it pertains to this litigation, is in words and figures as follows:

. . . . . . . . . . . . . . . .

"*Be it Ordained by the Board of Commissioners of the City of Wichita, Kansas:*

. . . . . . . . . . . . . . .

"Section 59. Selling goods on Sunday. Any person who shall sell or expose for sale any goods, wares or merchandise in the city of Wichita or keep open any grocery, on the first day of the week, commonly called Sunday, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding fifty dollars ($50).

"Defendants in their cross petition herein are asking this honorable court for an interpretation and construction of both ordinances, the one concerning which plaintiffs complain, and the one set forth by defendants, to wit, ordinance No. 11-592, and ask of this court a declaratory judgment thereon, and for cause show to the court that the plaintiffs herein and each of them have been selling and offering for sale and exposing for sale goods, wares and merchandise and holding open grocery stores on the first day of the week, commonly called Sunday, in direct violation of said ordinance, and they are now doing so and are threatening to sell and expose for sale goods, wares and merchandise in the city of Wichita and are threatening to keep open their grocery stores in violation of said ordinance on the first day of the week, commonly called Sunday.

"Defendants say there is a bona fide contention between the plaintiffs herein and the defendants as to the constitutionality and validity of said ordinance No. 11-592. The plaintiffs herein and each of them claim said ordinance is not valid and that they have good right to sell their goods, wares and merchandise on the first day of the week, commonly called Sunday, and are entitled to expose the same for sale and are entitled to maintain their grocery stores open on that day of the week, all contrary to the provisions of said ordinance.

"These defendants say that they have no adequate remedy at law, and without the aid of a court of equity said plaintiffs cannot be prevented from infringing upon said ordinance. That a declaratory judgment should be made and entered herein determining the validity or lack of validity of said ordinance, and that plaintiffs be enjoined by this honorable court from the violation thereof and enjoined from selling or exposing for sale any goods, wares and merchandise in the city of Wichita and from keeping open any grocery on the first day of the week, commonly called Sunday."

The answer and cross petition were amended as follows:

"For further answer and cross petition, defendants state that said ordinance attached to plaintiff's petition is a good, valid and subsisting ordinance of the city of Wichita, and has to do with the protection of the public health, morals, and well-being of the citizens of the city of Wichita, and its enforcement will aid in the protection of life, property, health and morals; and said ordinance is supplemental to ordinances No. 9,166 and No. 11,636, copies of which ordinances are hereto attached and made a part of this answer and cross petition."

Appellees moved to strike from defendants' pleading all reference to ordinance No. 11-592, upon the following grounds:

". . . These plaintiffs have raised no question in this proceeding of the constitutionality of said ordinance No. 11-592; that the matter of closing on Sunday is controlled by state statute; that the city has an adequate remedy at law and has for many years exercised that remedy at law; that said cross petition is not germane to this proceeding, for the reason that the ordinance attacked by plaintiffs herein does not purport to be a Sunday closing ordinance but merely an ordinance enacted in aid of the public health; that the same does not constitute a proper counterclaim, setoff or cross petition under the provisions of the code of civil procedure, or within the provisions of the declaratory-judgment act, or under the practice in equity in this state."

. The motion was sustained without prejudice to defendants' right to institute a separate action to determine the validity of ordinance No. 11-592. The trial court made certain findings of fact and rendered judgment in conformity therewith. The findings were:

"That the two provisions in section 1 of the ordinance herein involved, exempting therefrom food, cooked, baked or prepared on the premises, for immediate consumption on or off of the premises, and the exemption of milk, ice cream and frozen desserts, is an unreasonable classification and is discriminatory.

"Section 2 of the ordinance, providing that cooked or uncooked perishable foods, or foods subject to contamination, shall apply only to 'provisions, groceries and meats,' does not limit the application of the ordinance to perishable foods, or foods subject to contamination. Provisions, groceries and meats, includes all articles of food, whether or not such foods are of a perishable nature or subject to contamination.

"The court concludes that the ordinance is based upon an arbitrary classification and constitutes an unwarranted and unreasonable interference with the carrying on of lawful business, and is in violation of the federal and state constitutions, in that it deprives the plaintiffs of their liberty and property without due process of law, and denies to them the equal protection of the law.

"The ordinance contains a saving clause to the effect that if one section shall be declared unconstitutional that it shall not affect the remainder. It is impossible for the court to make a separation so as to say that any portion can remain effective."

We shall first consider the alleged error in striking all reference

in the answer and cross petition to the Sunday closing ordinance. Plaintiff's action was instituted under the declaratory-judgment act. Plaintiffs in nowise challenged ordinance No. 11-592, but only ordinance No. 12-113, and on the ground the latter ordinance did not constitute a valid inspection ordinance. Defendants contend it is a valid inspection ordinance. The validity of that ordinance, as an inspection ordinance, does not depend upon the validity or invalidity of the Sunday closing ordinance, which latter ordinance does not purport to be an inspection ordinance. In other words, the Sunday closing ordinance, in a proper action, might be held valid or invalid, depending upon the reason or reasons which impelled the enactment of that particular ordinance, without in any manner affecting the validity or invalidity of the inspection ordinance. Defendants, however, complain that plaintiffs are selling merchandise on Sunday in violation of both ordinances. That does not preclude the city from pursuing its remedy under the Sunday closing ordinance. On the other hand, if merchandise is being sold on Sunday in violation of the inspection ordinance, the violators thereof can be prosecuted under that ordinance only if that ordinance is valid. That is the only ordinance plaintiffs are challenging, and defendants cannot establish the validity of that ordinance by establishing the validity or invalidity of the Sunday closing ordinance. The latter ordinance did not arise out of the inspection ordinance, the transaction set forth in the petition, which was the foundation of plaintiffs' claim, nor was it connected with the subject of plaintiffs' claim, namely, regulation of business for purpose of inspection, nor was the Sunday ordinance necessary or proper in order to have a complete determination or settlement of the question involving the validity of the inspection ordinance. It was properly stricken. (G. S. 1935, 60-710 and 60-711; *Bank Savings Life Ins. Co. v. Schroll,* 141 Kan. 442, 444, 41 P. 2d 731.) In passing it also may be remarked if the ordinance was valid as an inspection ordinance, then it did not require the aid or supplementing influence of a separate and distinct Sunday closing ordinance to make it valid.

Is ordinance No. 12-113 a valid inspection ordinance? Defendants insist it is. They contend a city of the first class possesses statutory authority to provide for inspection of meat markets and shops (G. S. 1935, 13-411), and to make regulations to secure the general health of the city. (G. S. 1935, 13-436.) Defendants further claim cities possess a wide discretion in enacting legislation to

effectuate those purposes, and that courts are not concerned with motives or the wisdom of legislation designed to protect the public health. Concerning those general principles there is no disagreement between the parties. The real issue on which the parties differ pertains to the validity of the instant ordinance, and with that question the parties all concede courts are concerned. Before examining the ordinance and stating the specific contentions of the parties we shall briefly review the salient facts disclosed by the oral testimony.

Plaintiffs operated grocery stores and sold groceries, foods and provisions for human consumption such as are ordinarily handled by retail grocers. The evidence disclosed a substantial portion of their trade was with customers who worked during the daytime. Some of them lived in apartments or rooming houses. In some instances customers, both husband and wife, worked the entire day and made purchases after hours designated by the ordinance. Plaintiffs regulated their hours of business in order to accommodate the late trade which constituted a substantial portion of their business. The evidence disclosed if plaintiffs were compelled to operate only during the specified hours they would suffer material financial loss and that some of them would be obliged to close their stores. The evidence also disclosed meats and certain other provisions, such as are ordinarily sold at grocery stores or meat markets, could be and were sold after the hours fixed by the ordinance by those who were not operators of grocery stores or meat markets. The closing hours were fixed to correspond substantially with the working hours of the city's inspectors.

We shall now direct our attention to the provisions of the ordinance heretofore quoted. The contentions of defendants are: The ordinance and its exceptions apply to everyone alike who is engaged in retailing the foods specified in section one of the ordinance and there can therefore be no objection to the ordinance on the ground of unreasonable or arbitrary classification of foods or on the ground the ordinance discriminates against any business; the time fixed for inspection is reasonable; the ordinance therefore constitutes a reasonable exercise of the city's police power in its efforts to safeguard and protect the public health. If those contentions are sound the trial court erred in striking down the ordinance.

Plaintiffs contend the ordinance was in reality enacted in the interest of large dealers in groceries and meats and was designed to

close, and if upheld will result in closing, small grocery stores and meat markets which operate longer hours than their larger competitors; that irrespective of the motive or economic wisdom of such legislation, the ordinance is invalid for the following reasons: The ordinance is unreasonable and arbitrary in its classification of foods and is highly discriminatory in character; the alleged inspection ordinance unjustly interferes with the conduct of legitimate business; it is uncertain; as a criminal ordinance it is too indefinite, uncertain and ambiguous to constitute valid legislation.

Defendants emphasize the fact the ordinance was directed at certain foods and not at persons, firms or corporations, and that it therefore applies equally to all who sell, offer for sale, or expose for sale the particular foods described in section one, to wit: "Cooked or uncooked perishable foods, or foods subject to contamination." As previously stated, defendants contend the exceptions contained in paragraphs one and two of section one also apply to all persons alike. Was the ordinance in fact designed to prohibit the sale, at other than inspection hours, of only those commodities described in section one? If only those particular commodities were intended to be covered, why was section one not ample and sufficient to make entirely plain that specific intent? If only those articles were intended to be embraced in the ordinance, then just why should that clear expression of intent have been rendered doubtful and ambiguous, if not in fact entirely nullified, by adding section two, which latter section defines the terms "cooked or uncooked perishable foods, or foods subject to contamination," as applying—"only to such foods as are usually sold under the classification of *provisions, groceries* or *meats"?* (Italics ours.) We think it quite apparent section two was about as clearly designed to prohibit operators of grocery stores and meat markets from functioning at other than the specified hours as if such operators had been specifically named in the ordinance. Provisions, groceries and meats, of course, embrace many articles of food not described in section one. It seems to us the terms "provisions, groceries and meats" embrace about every article of human consumption that can be imagined. Those terms embrace exactly what operators of grocery stores and meat markets retail. The fact operators of such stores are not specifically named is immaterial. The result, if the ordinance is upheld, will be that operators of grocery stores and meat markets can operate only during the specified hours, with the exception of

the sale of milk, ice cream and frozen desserts, which latter articles were excepted from the operation of the ordinance.

Were others than operators of grocery stores and meat markets permitted to retail foods specified in section one at any hours, and did the foods permitted to be sold by such other persons constitute a fair and reasonable classification designed to safeguard and protect the public health? Section one contains certain exceptions or exemptions, which read:

"*Provided, however,* This ordinance shall not apply to foods cooked, baked, or prepared on the premises for immediate consumption on or off the premises.

"*Provided further,* This ordinance shall not apply to milk, ice cream and frozen deserts [desserts]."

It is evident the first exemption was as clearly intended for the benefit of operators of hotels, restaurants, coffee shops, hamburger stands, drugstores or other similar places where foods are prepared for sale, as though they had been definitely named in the ordinance. It will be noted that while the operator of a grocery store or meat market could sell his meat only during inspection hours, persons embraced within exception number one could sell it at any hour, irrespective of how contaminated it might have been when he ground it up for a sandwich, or when he placed it between two slices of bread, or when he began preparing it by a process of cooking, baking or frying. Obviously, ample seasoning or frying might render the odor of contaminated food less offensive or noticeable, but neither of the processes could cure the spoiled character of the food. Nor does the fact that tainted or poisoned meat is consumed immediately when served purify it. Under section two of the ordinance the operator of a grocery store could not sell, during hours other than those specified, fruits or vegetables canned under government supervision and inspection, but persons embraced within exception one could sell, without inspection, fruits and vegetables, so long as the fruits and vegetables themselves or a fruit or vegetable salad was prepared on the premises for immediate consumption. Operators of grocery stores or meat markets could not sell governmentally supervised and inspected canned meats after six-thirty p. m., but persons within the exemption could sell them at any time, even though they prepared the meal from the contents of the same identical can, irrespective of how long the contents might have been exposed to the elements of contamination, and in some places the

elements are numerous. A baker might sell pies and cakes, baked in his bakery, at hours other than those specified in the ordinance, but the same baker could not sell the same pies and cakes through his own grocery store at hours other than those specified. The operator of a restaurant or hotel might slice a banana or orange and serve it on the premises, or permit the purchaser to take it off the premises, at any time, but the same identical banana or orange could not be sold at a grocery store to a hungry farmer, child or laborer, who desired to eat it at the store, except during the specified hours. Moreover, what reasonable basis can there be for permitting the sale of milk, ice cream or frozen desserts, at any hour, which products are highly susceptible to contamination, and for prohibiting a groceryman from selling, except during specified hours, a pound of butter or cheese which is carefully protected by wrapper and carton? Numerous other illustrations readily suggest themselves, but these are sufficient to illustrate the unreasonableness in the classification of foods which, under the ordinance, may and which may not be sold without being subject to inspection. The examples noted will also suffice to disclose the discriminatory and oppressive effect of the ordinance upon a legitimate trade or business.

While municipalities have authority to enact ordinances designed to safeguard and protect the public health, discriminations as to particular classifications of food or business effected by such enactments, must be based upon real and substantial distinctions and not upon fictitious distinctions which have no reasonable or substantial relation to the public health or general welfare of the inhabitants. This court, on numerous occasions, has considered and denied the power of municipalities to enact ordinances relating to various subjects where the ordinance did not conform to the above principle. (See *City of Atchison v. Beckenstein,* 143 Kan. 440, 54 P. 2d 926, wherein former cases of this court were reviewed.) In those cases it was held the ordinance was violative of both the state and federal constitutions. The instant ordinance is invalid for the same reasons.

The power of a city to enact an ordinance very similar in its effect to the instant ordinance was sustained by an intermediate court of appeals in the state of California (*Justesen's Food Stores v. City of Tulare,* 70 P. 2d 529 [1937]), but such power was denied on appeal to the supreme court of that state in *Justesen's F. S., Inc., v. City of Tulare,* 12 Cal. 2d 324, 84 P. 2d 140 (1938). In the latter case numerous authorities were reviewed, and it was held:

"A city has the right to insure protection of public health against the manufacture and sale of unwholesome foods, and to that end to regulate certain occupations, but such regulation of a lawful business must be reasonable; and .the test of the reasonableness of a measure involves a determination as to whether it is for the benefit of the community in general, that is, for the public health and general welfare, and whether the means adopted to produce the public benefit are reasonably necessary to accomplish that purpose and not unduly oppressive upon individuals.

"Where a city ordinance prohibits the receiving and selling during stated periods of uncured and uncooked meats, and 'other foods of any kind intended for human consumption,' in all establishments except certain designated classes such as boarding houses, restaurants, dispensers of beverages and confectionery stores, which excepted establishments are permitted, without restriction, to distribute and deal in the very products which the ordinance prohibits grocery stores from handling in any manner during said periods, the ordinance arbitrarily imposes burdensome conditions upon a selected class of merchants.

"Where such an ordinance, in addition to prohibiting grocery stores from receiving and selling uncured and uncooked meats and other foods at night and on Sundays and holidays, provides for inspection of such stores, but permits restaurants, confectioneries, dispensers of beverages and other excepted businesses to deal in such foods at such times free from inspection, the ordinance, as a 'health measure,' is unreasonable and arbitrary.

"Such an ordinance may be valid as a health-promoting law when its provisions relate only to food susceptible to quick spoilage, including uncured and uncooked meats, but when its operation is extended to include 'other food of all kinds,' including bottled, packaged and canned products, the ordinance clearly oversteps the bounds of reasonableness, so far as concerns the promotion and preservation of public health, and resolves itself into a discriminatory closing law, which violates the state and federal constitutions.

"It is not a valid exercise of police power *to restrict unnecessarily a lawful occupation conducted in a reasonable manner, merely that it may accord with the convenience of inspectors;* and an ordinance which prohibits grocery stores from receiving and selling uncured and uncooked meats and other food at nights and on Sundays and holidays, but permits certain other designated establishments to sell such food at such times, cannot be justified as a valid exercise of police power on the ground that the hours of the food inspector and food inspection department created by such ordinance do not extend to nights, Sundays or holidays." (Syl. ¶¶ 1, 4, 5, 6, 7.) (Italics ours.)

See, also, *Chan Sing v. Astoria,* 79 Oregon 411 (1916); *Chaires v. City of Atlanta,* 164 Ga. 755 (1927); *Patton v. Bellingham,* 179 Wash. 566 (1934); *Cowan v. City of Buffalo,* 288 N. Y. S. 239, 247 App. Div. 591 (1936); *Olds v. Klotz,* 131 Ohio St. 447 (1936); *Allen v. Colorado Springs,* 101 Colo. 498 (1937); *Oklahoma City v. Johnson,* 183 Okla. 430 (1938).

In the Cowan case, *supra,* it was held:

"To justify ordinance prohibiting operation of open-air markets at certain times upon ground that ordinance was proper exercise of police power, ordinance must have for its object improvement of social, moral, physical, or economic condition of public in general, and means employed must be reasonably necessary for accomplishment of that end.

"State has no power to interfere arbitrarily with private business or to impose unreasonable or unnecessary restrictions thereon under guise of promoting public welfare." (Headnotes, ¶¶ 4, 5.)

It is well to remember the validity of such legislation must be determined by an application of the enactment to the particular facts and circumstances involved and that the reasonableness of the enactment is a question for courts to determine in the exercise of sound judicial discretion. No arbitrary rule, therefore, can with justice be made applicable to every circumstance. The concern of courts must be and is with the preservation and evolvement of principles which constitute helpful guides to the process of administering justice. The foregoing decisions are not cited because the facts in all of them are identical to those in the instant case, nor because this court would necessarily adopt and apply everything said in all of them to any situation which might arise in this state. They are cited, however, because they state principles which in our opinion constitute safe and sound guides for judicial deliberation and action relative to the particular questions presented in the instant case.

Defendants rely upon *State v. Nesbit*, 8 Kan. App. 104; *City of Kansas City v. Grubel*, 57 Kan. 436, 46 Pac. 714; *Kansas City v. Henre*, 96 Kan. 794, 153 Pac. 548; *State v. Weldy*, 113 Kan. 734, 212 Pac. 662; *State v. Haining*, 131 Kan. 853, 293 Pac. 952, and upon cases from other jurisdictions in which the ordinance in question applied alike to all persons embraced therein. Nothing contained in the Kansas cases is inconsistent with the views herein expressed. The decisions involving ordinances in which all persons embraced therein were affected alike are not in point.

Plaintiffs were not prosecuted under the ordinance for the commission of an offense and it is unnecessary to treat their contention that the ordinance was too indefinite and ambiguous to form the basis of a criminal action.

The judgment of the trial court was correct, and it is affirmed.