No. 35,760

THE STATE OF KANSAS, ex rel. MITCHELL H. BUSHEY, County Attorney, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ALLEN, W. C. Hankins, H. V. Adams, R. S. Wilson, as Members of said Board, and U. D. NEVITT, County Clerk, etc., *Defendants*.

(133 P. 2d 165)

Opinion filed January 19, 1943.

*Mitchell H. Bushey* and *DeWitt Stiles,* both of Iola, argued the cause for the plaintiff; *Willis McQueary,* of Osawatomie, of counsel.

*L. T. Cannon,* of Humboldt, argued the cause for the defendants.

The opinion of the court was delivered by

WEDELL, J.: This is an original proceeding in the nature of quo warranto and is instituted by the state of Kansas on the relation of the county attorney of Allen county. It challenges the power and authority of the board of county commissioners of Allen county and its county clerk to adopt a budget, levy a tax, extend the levy on the tax rolls and to collect a tax pursuant to chapter 318, Session Laws of 1941 (G. S. 1941 Supp. 68-740 to 68-744, inclusive), being an act designed to levy and collect a tax in counties operating under the county unit road system for the purpose of relieving road benefit district landowners from further payments of benefit district assessments and to reimburse such landowners for payments already made,

except where roads constructed under the benefit-district plan have become a part of the state highway system.

The case is submitted upon the pleadings and the following agreed statement of facts:

"*One*. That Mitchell H. Bushey is now and has been since January 9, 1939, the duly elected, qualified and acting county attorney of Allen county, Kansas; and brings this action in the name of the state of Kansas under his authority as such officer;

"*Two*. That Allen county is a duly organized and existing county of the state of Kansas and that W. C. Hankins, H. V. Adams and R .S. Wilson are the duly elected, qualified and acting members of the board of county commissioners of said Allen county, Kansas; and that U. D. Nevitt is the duly elected, qualified and acting county clerk of Allen county, Kansas.

"*Three*. That about the year 1934 the board of county commissioners of Allen county, Kansas, by sufficient proceedings, adopted the provisions of the county unit road system as provided by sections 68-516 to 68-518, inclusive, of General Statutes of Kansas 1935, and ever since have been and are now operating under said county unit road system.

"*Four*. That beginning about the year 1923, there have been constructed in said Allen county 18 benefit district road improvements, instituted under 18 separate petitions under the provisions of article 7, chapter 68 of the General Statutes of Kansas of 1935, and the statutes of which same are amendatory, and in each instance a portion of the cost of said road improvements has been assessed against the several tracts of land within the benefit districts designated in said petitions, respectively, and assessments have been levied against and collected from the owners of the land in said various benefit districts; that at least nine of the road improvements so constructed have not become a part of the state highway system.

"*Five*. That petitions signed by fifty-one percent or more of the voters within said Allen county have been filed with said board of county commissioners in compliance with section 68-742 of 1941 supplement to the General Statutes of Kansas of 1935; the sufficiency of said petitions has been determined and approved by said board of county commissioners.

"*Six*. That under the power and authority assumed to have been granted to them under sections 68-740 and 68-741 of 1941 Supplement to General Statutes of Kansas of 1935, the said defendants, board of county commissioners, have adopted a budget for the ensuing year, in which budget the sum of $78,557 has been budgeted for the purpose of retiring any and all outstanding benefit district bond indebtedness in lieu of a similar levy against the owners of the property in the various benefit districts above referred to and for the purpose of reimbursing one-half of all benefit payments heretofore made in compliance with assessments levied on the several tracts of land within the benefit districts above referred to for roads constructed under the benefit district plan in said county, which roads have not become a part of the state highway system; and said defendant, board of county commissioners, has levied a tax for the year 1942 upon all the tangible taxable property in said county for the purpose of raising the funds so budgeted and making said payments, the said

board of county commissioners intending thereby to reimburse said benefit district landowners for one-half of all payments of principal heretofore made and interest on deferred installments of the amounts assessed against said tracts of land for their share of the cost of road improvements.

"*Seven.* That said defendant U. D. Nevitt, county clerk of Allen county, is proceeding to extend the levies so made against all the tangible taxable property in said county as shown by the last returns of the assessors of said county.

"*Eight.* There are twenty-five counties in the state of Kansas that are operating under the county unit system and forty-seven counties that have benefit-district roads. There are at least eleven and not to exceed twelve counties which are both operating under the county unit system and in which benefit-district roads have been constructed.

"*Nine.* That since the effective date of the act in question there is at least one county, viz., Montgomery, which has commenced proceedings to adopt the county unit system, which proceedings are not completed at this date and which county has constructed benefit-district roads prior to the enactment of said act. There are only two counties, viz., Allen and Miami, in which the board of county commissioners have received petitions under the act and found them to be sufficient. In neither of said counties has the board of county commissioners elected to issue bonds as provided for by the act.

"*Ten.* That the petitions referred to in paragraph five hereof were approved by said board on March 27, 1942, and within sixty days after the filing thereof.

"*Eleven.* That said board of county commissioners approved said petitions, adopted said budget and made said levy for the reason that they considered said law mandatory.

"*Twelve.* That in paragraph number 6 of plaintiff's petition and in the second paragraph of the prayer of the petition where the year 1943 is written inadvertently the same was intended to be and may be changed to read 1942.

"*Thirteen.* That the plaintiff does not have any sufficient or adequate remedy at law."

Plaintiff challenges the above provisions of the 1941 act on the ground they are unconstitutional. One of the reasons assigned is that the act constitutes special legislation and is therefore prohibited by article 2, section 17, of the state constitution. That provision reads:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The particular provisions of the 1941 act challenged by plaintiff are those contained in sections 1 and 2. Those sections provide:

SECTION 1. "Whenever in any county operating under the county unit system as provided for in section 68-516 of the General Statutes of 1935, there shall have been constructed benefit-district roads under the provisions of

article 7, chapter 68 of the Revised Statutes of 1923, and amendments thereto, the county commissioners of said county shall levy a tax on all taxable property in said county for the purpose of retiring any and all outstanding benefit-district bond indebtedness in lieu of a similar levy against the owners of the property in the various benefit-districts as provided for in section 68-706 of the General Statutes of 1935: *Provided, however,* That this act shall only apply to benefit-district roads constructed under the benefit-district plan which have not become a part of the state highway system." [G. S. 1941 Supp. 68-740.]

SECTION 2. "The county commissioners of any such county are hereby authorized and directed to reimburse all benefit payments heretofore made to those persons who have heretofore made benefit payments, their heirs or assigns, which benefit payments have been paid in compliance with the assessments levied on the several tracts of land within the benefit districts for roads constructed under the benefit-district plan which have not become a part of the state highway system. Said reimbursements shall be made out of the county road fund or general fund and shall be made any time within ten years from the effective date of this act: *Provided,* That not less than one-tenth of the reimbursements shall be paid in any one year. The board of county commissioners are hereby authorized and directed to levy a tax sufficient to pay the reimbursements as above provided for. Such rate of levy shall be in addition to the rate authorized by law at the time of making such levy or the county commissioners, if they so elect within one year after this act becomes effective, may issue general county bonds in the amount of the required reimbursements and make said reimbursements in one payment. Said bonds to be issued serially not to exceed ten years." [G. S. 1941 Supp. 68-741.]

The title of the act reads: "An act relating to benefit-district roads in certain counties, providing for the retirement of certain benefit-district bonds, and providing for the reimbursement of certain benefit-district road payments heretofore made."

From the foregoing title and quoted sections it is plain the act was definitely intended to be limited and restricted in its scope of operation. It limited the right to make reimbursements to certain landowners who previously had made benefit payments under the benefit-district plan. The act by express provision does not apply to benefit-district roads which have become a part of the state highway system. That restriction need not be considered, it being agreed the proposed levy pertains only to benefit-district roads which have not become a part of the state highway system. The act also definitely restricts its application to benefit-district landowners residing in counties operating under the county unit system. Plaintiff contends section 2 of the act is made applicable only to counties operating under the county unit system on the effective date of the act and that it does not apply to counties which may later adopt that act. With that contention defendants do not agree. They contend it

authorizes reimbursement of benefit payments made at the effective date of the act and that it applies to any county *whenever* it adopts the county unit system and is operating thereunder. Defendants' contention as to that particular point may be correct, but we do not deem it necessary to determine that question now. We are concerned with a more fundamental legal problem which pertains to facts upon which the parties agree. The parties stipulated that there are only twenty-five counties in the state which are operating under the county unit system and that there are forty-seven counties that have benefit-district roads and that there are not to exceed twelve counties which are operating under the county unit system and in which benefit-district roads have been constructed. (Stipulation, ¶ 8.) The parties, therefore, agree the act could operate presently in not to exceed twelve counties and that it was not intended to operate now in the remaining twenty-five counties in which benefit-district roads have been built and in which the county unit system does not obtain.

Article 2, section 17, of our constitution was amended in 1906 by the addition of the portion thereof which follows the last semicolon. In view of the amendment it is the duty of the courts to determine whether the instant act is repugnant to the provisions of article 2, section 17.

The instant act is designed only for the benefit of landowners in road benefit districts located in counties where the county unit system is now in force and perhaps also for the benefit of the same landowners in counties where the county unit system may be adopted in the future. For present purposes we may assume the act also embraces benefit-district landowners residing in the latter type of county. In any event the basis of classification is the county unit system. The law could have been made applicable to road benefit-district landowners in all counties in which benefit-district roads had been built. Under the act we therefore have a definite and distinct classification of road benefit-district landowners. The landowners in both groups have been assessed and have paid for the construction and maintenance of roads under the same benefit-district road law. One group is benefited by the instant legislation and the other is not. Does this classification contravene article 2, section 17, of our constitution?

It is true the legislature has power to enact laws of a general nature which will be applicable only to a certain portion of the state,

to a community or to a certain class of citizens. In other words, the legislature has power to pass laws which apply to and operate uniformly on all members of the class created, but the classification created must be a natural one and must rest upon a genuine and substantial basis. The classification cannot be an arbitrary or fictitious one but must be based upon real and substantial distinctions which have a reasonable and substantial relation to the subject matter involved. These principles frequently have been applied to legislation embracing various and sundry subjects. (*Rambo v. Larrabee,* 67 Kan. 634, 73 Pac. 915; *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583; *Board of Education v. Davis,* 87 Kan. 286, 123 Pac. 885; *Ashley v. Wyandotte County Comm'rs,* 121 Kan. 408, 247 Pac. 859; *Craig v. Craig,* 143 Kan. 624, 630, 56 P. 2d 464; *City of Atchison v. Beckenstein,* 143 Kan. 440, 54 P. 2d 926; *Barker v. Kansas City,* 149 Kan. 696, 88 P. 2d 107; *McCulley v. City of Wichita,* 151 Kan. 214, 98 P. 2d 192; *Rural High School v. Brown County Comm'rs,* 153 Kan. 49, 51, 10 P. 2d 154.)

In the Anderson case, *supra,* it was said:

"It may be said in passing, however, that it will be the duty of the courts, when that question arises, to apply the established tests to determine whether an attempted classification by the legislature is a proper one, based upon some apparently natural reason suggested by necessity and occasioned by a real difference in the situation and circumstances of the class to which it applies, or whether it is arbitrary or capricious and excludes from its provisions some persons, localities or things to which it would naturally apply except for its own limitations. It may be said, however, that it will not become the duty of the courts to invent reasons for upholding a law which is repugnant to either clause of this provision." (p. 734.)

In *Board of Education v. Davis,* supra, we stated:

"That there may be classes and subdivisions of classes in legislation as to cities without offending the constitutional restriction as to special laws is conceded, but such subdivisions and classifications cannot be carried so far as to produce a special result or an enactment which will not operate equally upon all that naturally belong to a defined class. 'If the classification is arbitrary or fictitious it is objectionable, but where it is based upon such differences in situation as to be reasonable in view of the purpose to be accomplished, and tends fairly to accomplish that purpose, it must be upheld.' (*In re Williams,* 79 Kan. 212, 217, 98 Pac. 777.) (See, also, *Clarke v. Lawrence,* 75 Kan. 26, 88 Pac. 735; *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *The State v. Pauley,* 83 Kan. 456, 112 Pac. 141.)

"An act which operates on all persons and things standing in the same situation and circumstances and which may be reasonably placed in a single class

is a general law, but an act is not general which arbitrarily and capriciously restricts the operation of the act to particular persons or things of a class and does not embrace or affect all which naturally belong to that class. A law may be special by being so restricted as not to include all the subjects of a class and also where it excludes subjects of a class from its operation." (p. 289.)

In the Ashley case, *supra*, we said:

"To be valid, however, the distinction between one class and another must be real and germane to the purposes of the act, and failing in these respects the act must necessarily be condemned as invalid." (p. 411.)

Wherein does a natural, real and genuine distinction or basis lie for a classification which discriminates between relief afforded landowners in road benefit districts who reside in counties where the county unit system obtains and similar landowners who reside in counties where that system does not obtain? If such a natural and genuine distinction or basis for classification inheres in the county unit system we are not familiar with it and no such basis is disclosed in the briefs presented.

Defendants contend sections 1 and 2 of the act contemplate that the intended relief may be obtained by benefit-district landowners *whenever* a county is operating under the county unit system and therefore the same relief is made available to landowners in all counties where benefit-district roads had been built on the effective date of the act. Does that answer hit the mark? The subject of classification is road benefit-district landowners and not counties. The basis for the classification of those landowners, according to the act, is the county unit system. The evil lies in the absence of a genuine basis for the classification created. The benefit-district landowners discriminated against, without any fault of their own and in spite of every effort and influence they can exert, may be wholly unable to cure the discrimination. The voters of the counties in which the county unit system does not now obtain may never, for reasons sufficiently valid to them, adopt the county unit system. They cannot be compelled to do so. How can it then be said the same relief is made available to the benefit-district landowners against whom the act presently discriminated? While courts should be and are reluctant to strike down legislation on constitutional grounds, we are by constitutional mandate charged with that responsibility and duty if an act, in our judgment, is invalid. We are persuaded sections 1 and 2 of the act contravene article 2, section 17, of the state constitution. In view of this conclusion the writ must be allowed. It is

therefore unnecessary to treat other grounds upon which the constitutionality of the act is challenged.

The writ is allowed.

PARKER, J., not participating.

HOCH, J. (dissenting): The court holds that the act is invalid for the reason that the classification upon which applicability of the statute is based does not rest upon any real and genuine distinction; that the classification has no reasonable and substantial relation to the subject matter involved and therefore contravenes article 2, section 17, of the state constitution which requires that "all laws of a general nature shall have a uniform operation." Being unable to join in that view, I shall state briefly the reasons for my dissent. Inasmuch as the majority opinion does not treat any of the other asserted grounds of unconstitutionality, I shall not discuss them or express any opinion concerning them.

I am mindful of the fact that article 2, section 17, as amended in 1906 clothes the courts with the power, and the duty—when the issue is properly raised—of determining whether enactments of the legislature are repugnant to the requirements therein stated. I do not understand, however, that this means that courts are to substitute their opinion for that of the legislature on issues of public policy. Nor do I mean to say that the majority opinion implies such a proposition. But I do say that we should be zealous to avoid infringing upon the legislative prerogative. The test is not whether we consider a classification adopted by the legislature to be wise or prudent, or whether we think a better one could have been established. A statute attacked on the grounds here discussed should not be invalidated unless we can say with confidence that no real, no substantial basis for the classification can be said to exist.

In the first place, the instant act, as I construe it, applies not only to road benefit districts in counties which had theretofore adopted the county unit system but to all counties which might thereafter adopt such system. And the majority opinion is written upon the premise of that construction. It was stipulated that there are twenty-five counties in the state which are operating under the county-unit system and that in at least eleven of the twenty-five counties benefit-district roads had then been constructed.

The bare question, therefore, is presented of whether we can con-

fidently say that there was no real or substantial basis whatever for the legislature to make the act available in counties which have the county-unit system and not available in counties which do not operate under that system. I am unable so to assert. As I see it there is at least one very important distinction between the two classes of counties which bears a substantial relation to the subject matter involved in the act. That distinction is that in counties which have adopted the county unit system the cost of construction and maintenance of all roads, bridges and culverts is paid by the county by uniform levy upon all property in the county, and an increase in the maximum county levy is specifically provided for on that account. (G. S. 1935, 68-516.) This is not true in counties which do not operate under the county-unit system. The result—as it bears on the instant issue—is that landowners in road benefit districts in county-unit counties help pay—and equally—not only for their own roads but for all roads in the county. They must pay this increased county levy on top of the special tax payments they have made under the benefit-district levy. This is an extra burden—a sort of double taxation—which benefit-district taxpayers do not have in counties not operating under the county-unit system. It seems to me, therefore, that a classification which makes the partial relief afforded by the act available in the county-unit counties and not in the others is not without substance. We might or might not have favored this classification if we had been members of the legislature, but I cannot agree that it is an arbitrary or capricious one.

It is said in the majority opinion that through no fault of their own landowners in benefit districts in counties not under the county-unit system may be unable to secure adoption of the system in their county and that therefore they are discriminated against. But argument of this same nature might be made even if the act were made available to *all* counties regardless of what system they operate under. It would still be true that before the partial refunds could be made to benefit-district landowners there must be a petition for such action signed by more than fifty-one percent of the voters of the county. In some counties such a majority could be secured and in others it could not. This kind of a result is incident, in many cases, to democracy's majority rule. Perfect equality of taxation has never been achieved and lack of such perfection cannot be regarded as alone sufficient to condemn a taxing statute. Indeed, under all

of the road-benefit-district statutes inequalities more pronounced than the one here discussed have in countless cases existed, and yet the constitutionality of such statutes has been upheld. For instance, take the normal case of a benefit district extending back one mile on each side of the highway—in such a situation the landowner who resides near the edge of the district and uses the parallel road a mile from the improved highway pays benefit-district taxes on his land while his neighbor residing just across the road, but outside the district, pays none. Yet both use the same roads, and have exactly the same travel benefits. That sort of thing cannot be entirely avoided and courts as well as legislatures must be realistic.

Our statutes have progressively recognized the common interest· of all taxpayers in the improvement of all the highways, and that recognition is background for these statutes which seek to provide a partial refund to those upon whom—whether personally favorable or not to the improvements—a special burden has been imposed under the outmoded benefit-district system. In the instant case a majority of the voters of Allen county, proceeding regularly under the statute, have petitioned the county commissioners to make a levy to partially correct what they evidently regard as an injustice resulting from the old system. I find insufficient the reason assigned for striking down the statute enacted for the purpose of enabling them, and the taxpayers of other counties, to do it.

WEDELL, J., joins in the above dissent.